UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ms. Sandra L. Cullum

Ms. Deirdre Saleh

Write the full name of each plaintiff.

-against-

Wyndham Hotels & Resorts Corp.

&Wyndham Destinations Inc.; Mr. Geoffrey A. Ballotti,
Wyndham Hotels (WH) & Resorts, Inc. & Ms. Elisabeth Gale

dba Wyndham Corporate Office & Headquarters,

Broadridge Corporate Issuer Solutions

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

22 CV 9700

(Include case number if one has been
assigned)

**AMENDED
COMPLAINT**

Do you want a jury trial?
☑ Yes   ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☒   **Federal Question**

☐   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?
- Codes:195, 196, 370, 371, 380, 385 & 446 -Violation of TILA, U.S.C. § 1635(f),1640, Reg. Z, 12 C.F.R.§ 226.15(a)(3), 225.23(a) (3) & 226.23, -15 U.S.C. § 1611 (Criminal liability for willful & knowing violation); §1640 (Civil liability), Consumers Damage §1640;

- Failure to support the invoked Consumer Rights of Rescission 15 U.S.C. § 1635 & failure to document property of a purchase

- US § 1026.15 Right of Rescission.  N.Y. Penal Law § 260.32. N.Y. Penal Law § 260.34. N.Y Penal Law (§349-350-e).; §155.30(4)

- N.Y. Penal Law Gen. Bus. §350.; Statute of Frauds GOB § 5-703.; N.Y Penal Law § 70.; New York Penal Law §165.15, §165.17

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , <u>Ms. Sandra L. Cullum</u>, is a citizen of the State of
            (Plaintiff's name)

## New York

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, Mr.Geoffrey A. Ballotti, Wyndham Hotels & Resorts Inc , is a citizen of the State of
(Defendant's name)

# New Jersey

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, Wyndham Hotels & Resorts Corp. & Wyndham Destinations, Inc.: , is incorporated under the laws of

the State of **New York**

and has its principal place of business in the State of **New Jersey**

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in **New Jersey**.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Sandra | L. | Cullum |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 2770 West 5th Ave. Apt. 7A |
|---|
| Street Address |

| Brooklyn | New York | 11224 |
|---|---|---|
| County, City | State | Zip Code |

| 646-229-5032 | sbrwnsugah@aol.com |
|---|---|
| Telephone Number | Email Address (if available) |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

| Mr. Geoffrey A. | Ballotti |
|---|---|
| First Name | Last Name |

President & CEO Wyndham Hotels & Resorts Corp.

Current Job Title (or other identifying information)

22 Sylvan Way

Current Work Address (or other address where defendant may be served)

| Parsippany | NJ | 07054 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| Wyndham Hotels & Resorts Corp. | |
|---|---|
| First Name | Last Name |

Current Job Title (or other identifying information)

22 Sylan Way

Current Work Address (or other address where defendant may be served)

| Parsippany | NJ | 07054 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| Wyndham Destinations | |
|---|---|
| First Name | Last Name |

Wyndham Destinations Company Entity of WH

Current Job Title (or other identifying information)

6277 Sea Harbor Drive

Current Work Address (or other address where defendant may be served)

| Orlando | Florida | 31821 |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 4:**   Broadridge Corporate Issuer Solutions
_____

First Name                          Last Name
Agent: Assigned
_____

Current Job Title (or other identifying information)
PO Box 1342
_____

Current Work Address (or other address where defendant may be served)
Brentwood,                    New York              11717
_____

County, City                         State                Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:   NY (Business Comms), FL (WH Resort Property), NJ WH Business (Product & negligence liability)
_____

Date(s) of occurrence:   10/29/2021 Issue to Present
_____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

See attached Addendum: A1 Amended:
Brief Justification:

Plaintiffs proposed class action & a lawsuit against that the Defendants Wyndham Corp. has defrauded & cheated consumers into purchasing "worthless" timeshares while the company's counsel has attempted to intimidate & threaten timeshare owners.   The Plaintiff's according to the case, the Plaintiff, noted these actions began in Dec 2019, unknowingly to the Plaintiffs that spent more than $143,201.65 on a timeshare based on Wyndham representations.  Defendants' actions amount to the "deception, fraud, false pretenses, false promise, misrepresentation, unfair practice and detailed plans with the concealment, suppression, or omission of a material facts & withheld vital consumer. Including, information of its origin of credit card transactions, false billing, to include other credit card illegal charges. & Defendant required disclosure of materials as consumer omissions materials & false billing of other monthly charges.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

## INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

Medical Stress, Back Neck and Mental Depression, along with arthritus and pain in

body. Plaintiff admitted to ER for suppression of entie body w & major weakening of the

aortia; the heart valve is damaged; a main largest artery in the body, originating from the

left ventricle of the heart and extending down to the abdomen, aligned & splits spine, two

smaller arteries. The aorta distributes oxygenated blood to all parts of the body system.

Plaintiff Injuries are the result of major financial losses, credit card abuse of unauthorized charge actions/ misuses, misrepresentations of contract data due to fraud actions by Defendants of Wyndham Corp., against 4 Defendants of Wyndham Corporation.

## IV: RELIEF

State briefly what money damages or other relief you want the court to order.

Individual Lawsuit Action     Established by Plaintiff alleging failure to Perform in the

following actions Negligence, $376,000.00 Individual (Judgement Compensatory, Injury,

Pain & Suffering of Financial Losses)   Against the Defendants based on alleged actions noted above.
- Class Action Laws: Defendant $15.4 Billion Dollars at = 500K Consumers at $30,000 minimum paid for timeshares they cant use = Plaintiffs seek formal restitution actions through Class Action.
- Requesting: Default Judgment, Summary Judgment, Judgment on the pleadings, Consent Judgment.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

5 Feb 2023
3 June 2022 Original & 2nd Signing          *Sandra Cullum*

| Dated | Plaintiff's Signature |

Sandra                    L.                    Cullum

| First Name | Middle Initial | Last Name |

2770 W. 5th Apt 7A

| Street Address |

Brooklyn                    New York                    11224

| County, City | State | Zip Code |

646-229-5032                    sbrwnsugah@aol.com

| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes    ☐ No

   If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

*Durch L. Saleh*

**From:** Plaintiff's

- o Parties A. | Ms. Sandra L. Cullum (Mother), 2770 West 5th Ave Apt. 7A. Brooklyn, NY 11224 Tel#646-229-5032  Email: sbrwnsugah@aol.com
- o Party B. | Mrs. Deirdre Saleh, 2675 W 36Th St., Brooklyn, NY 11224, Tel#: 347-244-2753, Email: deedee403@gmail.com

**To:** Pro Se Intake Office NY US District Court - SD, 500 Pearl St, New York, NY 10007

**Subject:** Formal Request for an Addition to Add a Party to the Initial - Lawsuit

Dear NY, Federal Court Pro Se Intake Office,

Please accept the following info to be added to the Additional Plaintiff Individual Add On to Complaint: See below, as the parties are Mother & Daughter.

- • **Plaintiff** Parties A. |
  - o Ms. Sandra L. Cullum (Mother), 2770 West 5th Ave Apt. 7A. Brooklyn, NY 11224 Tel#646-229-5032
  - o Noted on Initial Complaint Form
- • **Plaintiff** Parties B. |
  - o Mrs. Deirdre Saleh, 2675 W 36Th St., Brooklyn, NY 11224, Tel#: 347-244-2753
  - o Addee to be added to the existing Initial Complaint Form

Thank you in advance in the action to add the additional party to the lawsuit as noted.

Plaintiff Party A Signed: _Sandra Cullum   Sandra Cullum_

Plaintiff Party B Signed: _Deirdre L Saleh   Deirdre L Saleh_

Pro Se Intake Unit
U.S. District Court, Southern District of New York
40 Foley Square, Rm 105
New York NY 10007

Case No:  22-CV-09700

**PLAINTIFF's:**
- Parties A. | Ms. Sandra L. Cullum, 2770 West 5th Ave Apt. 7A. Brooklyn, NY 11224 Tel#646-229-5032; Email: sbrwnsugah@aol.com
- Parties B. | Ms. Deirdre Saleh, 2675 W 36Th St., Brooklyn, NY 11224, Tel#: 347-244-2753; Email: deedee403@gmail.com

**Letter Ref.**  Amendment

**DEFENDANT'S:** Wyndham Hotels & Resorts Corporation & Wyndham Destinations, Inc.:
- Mr. Geoffrey A. Ballotti, President Chief Exec. Officer
- Wyndham Hotels (W.H.) & Resorts, Inc. dba
     Wyndham Corporate Office & Headquarters
- Wyndham Destination's
- Broadridge Corp Issuer Solutions
  - **Mr. Geoffrey A. Ballotti, President & Chief Exec. Officer (CEO)**
     Wyndham Hotels & Resorts Corporation
     22 Sylvan Way
     Parsippany, NJ 07054
     973-753-6000
  - **Wyndham Hotels  (W.H.) & Resorts, Inc.
     D.B.A.
     Wyndham Corporate Office & Headquarters,
     Attn:**
     Wyndham Hotels & Resorts Corporation
     22 Sylvan Way
     Parsippany, NJ 07054
     973-753-6000
  - **Wyndham Destinations**
     6277 Sea Harbor Drive
     Orlando, FL 31821
     Elisabeth.Gale@wyn.com
     Office: 800 251 8736
     Fax:    407 626 6328
  - **Agent: Broadridge Corporate Issuer Solutions**
     Broadridge Corporate Issuer Solutions
     P.O. Box 1342
     Brentwood, NY 11717
     T: 877-456-5394
     F: 215-553-5402

## PETITION AND CLASS ACTION PETITION

Comes Now -The Plaintiff, by and through as noted the undersigned as Pro Se Litigates, and for his Petition against Defendants, states; individually and on behalf of all other persons similarly situated, allege on personal knowledge, via findings of awareness, on information and the belief, as follows seeks justice w/ a remedy for their Complaint against the

Defendants. All against Defendants primarily against the parties known as Mr. Geoffrey A. Ballotti, President & Chief Exec. Officer (CEO); Wyndham Hotels (W.H.) & Resorts, Inc. D.B.A.; Wyndham Corporate Office & Headquarters; Wyndham Destinations, Elisabeth Gale; & their affiliated agent: Broadridge Corporate Issuer Solutions & etc. aka Wyndham Destinations - Resorts, Inc. (Wyndham).

GENERAL ALLEGATIONS COMMON TO NATURE OF THE KEY ACTIONS OF COUNTS:
**COUNT I VIOLATIONS OF FRAUD RELATED TO THE FEDERAL TRUTH IN LENDING ACT (TILA)**
**AND THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA):**
**(Against Defendants of the Wyndham Corporation)**

1. Plaintiffs Ms. Sandra L. Cullum & Ms. Deirdre Saleh acknowledge the following events with key Background issues relevant to the complaint as Plaintiffs; as a Petition against the Defendants of Wyndham Corp with four parties. All through which the purchases & actions occurred as a timeshare related to the count's initial findings. And the entire set of Defendants can be served at their place of employment at all locations. As all times herein mentioned, all Defendants were executives, co-conspirators, agents, servants, employees, and joint ventures of each other and were acting within the course and scope of said conspiracy actions as a company agency, employment, and/or joint venture and with the permission and consent of each other, as a business. All Defendants are also approved to operate in New Jersey, New York City, & the State of Florida. Resulting in the jurisdiction where the contract violations were initiated and the venue would be considered & are proper in this Court; as Wyndham Hotels & Resorts Corporation & Wyndham Destinations, Inc., a business that operates timeshare, hotels & sales of property are a business corporation that provides services to the public, in their new York Office of Midtown Sales Office, of NYC, New York.

**Background**

1a. The Plaintiff, as parties both Ms. Cullum & Ms. Saleh's Family together, attended on events sponsored & noted explicitly at the location of the Wyndham Hotels in the city establishing jurisdiction at the location, indicated at that city intake office, where these sales events occur regularly. Circumstances arose on Monday, 21st of Jan. 2019, in a midtown New York City, NY, which took place at the Wyndham Hotel Site location. An owned and operated hotel site of the Defendant was presented by their Marketing Team that invited the family down to an initial action of sales & presentations at the 733rd 3rd Ave 2nd Flr, New York, NYC 10017 for a Wyndham Property - Sales Timeshare purchase for a conference mtg. All ref., the sales of property Time Share Sales and the initial incident placement of the activity occurred; that was met in the Wyndham Conference spaces by their staffs. Specifically, the misconduct with its actions committed by Wyndham Hotels specifically in regard to timeshare; the company takes no due care to care to be sincere, honest, or legally ensuring their sales of products and all documents are originated based on the deal that is being sold by a non-certified - real estate personnel for the Wyndham Property within the State of Florida, which violates federal sales and Truth & Lending laws, by a certified sales state agent. The other relevant assertion is based on no ability to perform rescission adequately to enable the Plaintiff its Legal Rights of Action in accordance with Federal Laws. Furthermore, the Plaintiff's claims are brought pursuant to the act resulting in significant material breaches as violations. Specifically, Defendant withheld critical financial, disposition, and certified legal data to make this contract supportive of its basis as a legal contract. No rescission letter or process to seek remedy to resolve the contract and no adequate financial amortization of repayment of the cost of all

documented fees are not thoroughly explained and noted. The Contracts data provides a list of circumstances in which no original signatures were allowed for the Plaintiff, no fully itemized allowances, and explanation or clarification of a bilateral contract of what is being bought other than a basic point scheme associated & connected to the contract. Which only allows for a worthless, no-binding agreement to consumers as Plaintiffs.  These circumstances include: "(a) the extent to which the injured party was deprived of long-term payment cost deprived of the benefit which the Plaintiffs reasonably expected; (b) the extent to which the injured party can show adequately cost paid for the part of that benefit of which we can't favorably use, exercise or own because it was a unilateral contract that benefits the company only.  It essentially fully deprived the consumers as Plaintiffs. The extent to which the party failing, being the Defendant, didn't perform which it paid obligations that led to a breach & forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Furthermore, what is at the heart of this is the Other Party Defendants; deprived Plaintiffs of "The Heart" of What It Bargained for with lies, manipulation, and an absence of information relevant to documented agreements as greed. And even caused significant medical issues to the Plaintiff, with heart & neural circulatory and cardiovascular problems, as reported in medical cases. These laws require certain disclosures to be made to consumers in connection with the sale of timeshares and property to give consumers the right to cancel the contract within a certain period of time & all proper documents must be made available to them at the time of origination; as an original signed copy.

2. The Defendants are hereafter known as the Defendants, primarily against the following:

- Mr. Geoffrey A. Ballotti, President & Chief Exec. Officer (CEO): Defendant is the sole executive officer of the company whom he was negligent in the miss management & financial failures, breakdowns & the collapse of improper violations of this program as per federal laws.

The entire executives and financial officers (Executives, Managers, & Administrators and down to staff leads) were & have been fully aware of these impacts nationwide to Plaintiff's.  Defendants should be held liable while overseeing the company to allow distrust and abuse of excessive financial charges to be plagued by the company. The Defendant's irresponsible leadership was attributed to the culture of greed and no communication to assist, resolve & decide these issues in a timely manner didn't exist; as the firm policy practices and business model was the wrong leadership & disastrous actions; and culpable by allowing irregular accounting to occur. The CEO is ultimately in charge of all operations and takes formal business responsibiiity, to all accountability of any suspected yet irregular violations as illegal activities that occur in the business, irregular and complacent negligence, as standard operations hurt so many Plaintiffs, as consumers. The company knew of this type of consumer concerns deep financial impact it would cause wrongdoing and overcharges with this scheme which led to corruption activities leading to practices that are not financial standards.  Because none of the advisors and sales team even had a financial, fiscal, economic, and monetary sales series license to justify its financial execution; and the lack of a good product safety, risk & governance was truly ignored.  In which the Defendant actions clearly can reflect a Plaintiff's concern resulted in a claim, for the suit complaint being present, presented or its product that was demonstratable distorted and oversold, by being sold & exaggerated & overstated; by any means of fraud, deception& manipulation of product in its product quality.  But more on paper than a viable product isn't worth anything of value in what is paid; its worth, value, & price is unsound & horribly portrayed as

a superior product; and consumers are fleeced & lied to. It not even supported by a tangible legal product, was the unfortunate lack of disclosure's and miss use of credit card charges to consumers uncovered & provided. The strategic direction was an abuse of power and access to accounting irregularities as an organization; in selling high premium property, customers see the shady, substandard quality product far below the value of what is being paid. All Lower-level Managers are often more engaged in the day-to-day operating activities of a company & can't speak up for these misguided and unethical sales tactics to lead to the practices as they appear to form a set of methods accepted and illegal. A CEO usually synthesizes these results and decides on a company's long-term plans and sales of quality high-value products; it would appear he, as the CEO, approved operations, and actions of his entire staff at all levels. These violations are relevant, pertinent, and applicable to the company stock manipulation also occurring based on the financial SEC report of sales & that the federal statute that protects consumers from confusing or deceitful lending practices; is not accurate based on improper sales accounting of revenue. The SEC report does not reflect where the revenue money of timeshares is going and what is hidden under since; the SEC report internal findings doesn't reflect any word of time-share revenues; as noted in its SEC for FY2021; as this why the company is constantly reorganizing to hide assets, revenue, and other sources of income, as presumably found in its report, which is a matter of public record disclosures. As a consumer, the Plaintiff has a fair legal right to have the right to detailed and precise disclosures on purchases from your lender being the Defendant. And the protection from unauthorized credit card charges on accounts, without Plaintiffs authorization, & even under regulation Rescission not being available, with Reg. Z of the TILA, under 15 U.S.C. 1601 of all credit cost not fully described and not disclosed. The company abused and violated these privileges numerous times in Jan 2023 by misusing the Plaintiff's credit card repeatedly more than four times without authorization to ensure it received an alternate way of obtaining payments. In addition, the properties sold are nowhere worth an estimated value of anything near the value of what is reportedly sold to consumers, and there was not signed, and valid assessment sheet of costs based on market value or any comparable that evaluates or substantiates the cost of the systems listed as properties, bearing a land occupancy to the dead, title or share of ownership listed based on a valid address noted for the properties. Again disclosures are not present by the Defendant & submitted for accurate evaluation and official records to the owner of the contract purchase.

     - <u>Wyndham Hotels (W.H.) & Resorts, Inc. D.B.A., Wyndham Corporate Office & Headquarters:</u> Defendants were wrongful and conducted this scheme of points and stressed operating procedures in the implemented changes and proposed plans; that were presented, and leadership knew of these irregularity actions and the business model. The entire board of directors had to endorse and evaluate the ability of valid sales of the products by the vital leadership & the company's finical stake as an investment. The Defendants, also among the board, allowed these actions to occur. These corrupt & fake goods sold had to be endorsed across many levels and pushed downstream to mid and lower-level management. The board and the leaders knew of this phony point scheme and overselling of property that was promoted, disseminated, and instilled. This practice essentially pilfered elderly citizens by stealing very cheap products; they would never travel to or obtain ownership. After crafting the long-term vision, companies usually look to themselves and other executive leaders to implement those plans. So, there's no way the company didn't evaluate and measure the product's worthiness or truthfulness, honesty, and fairness to effects consumers. As for a valid set of contract activities, they have been very aware, conscious, and alerted to these issues for years; due to the large and massive number of consumer

complaints that still continue to rack up weekly. The entire governing structure of the company oversees illegal accounting actions.

There are staff Changes that are often directly implemented by operational managers, but it is ultimately up to the Sr. Executives managed, led, and affected its account relationship of revenue and clearly irregular fiscal and stock impacts; they cheated consumers and the Plaintiffs in a multitude of ways, by which to ensure the long-term plans were being followed through for stealing money from the Plaintiffs.

- Wyndham Destinations (WD), through Ms. Elisabeth Gale: A Defendant knew a significant set of problematic account issues and fraud was occurring. The entire corporate business model emails for her emails and internal correspondence would dictate and show numerous leaders were informed across the whole stated number of years how these accounts had a significant detrimental impact on the lives of Plaintiffs. The Defendant, WD, and Ms. Gale can attest and be viable attribute witnesses and many other spokesmen on the phone as leaders. The Defendant - Wyndham Destination, has a multitude of crucial staff who could be instrumental, as a group, to tell what was forced to conduct illegal and fraudulent financial fraud practices and have seen this for themselves and how so many errors are present, especially when along with Ms. Gale at times was and has been pressured to not speak upon issues with the engagement since she saw cases that mistakes were made on The Plaintiff's contract; was clearly noted in the contract's language. And verbally acknowledged to one Plaintiff, Ms. Saleh, via telephonic discussions, by trying to correct these actions. As client-facing, the managers knew people needed help in various media obligations and public relations roles. The Plaintiffs tried so hard to address and obtain support, but Ms. Gale knew that this was a problem, but her hands were tied because she shouldn't correct it out of fear of retribution and loss of her job. So she passed it upwards, as the Plaintiffs both spoke on several occasions that she wanted to correct this, and letters were never answered. But further notification was acknowledged by phone calls to the office and a letter back to the Plaintiffs from the Defendants, Mgt. But duplicate and various contract actions were wrong and were made; by her fellow staffers. However, to ensure more revenue from Plaintiffs, generated, made, produced, and created yet; sold with immoral and scrupulous sales tactics, To include, nondisclosures being made countless times.

As the internal staff and numerous staff made it, the team left the consumers on a ledge of financial ruin. The information she stated she knew there were issues with this contract because it was noted; the people made mistakes due in part to the data she saw on the records. It was also seen believed that there were multiple records on various profit revue consumers and that data sets existed to continue monitoring and defrauding consumers as to what occurred to us as Plaintiffs. Lastly, we often faced disruptive assistance and no actions to resolve issues when we sent handwritten letters to the company. Or not responding, following up on calls when we needed help with the account, and doubling information when that's not what we needed. This includes being involved in media relations over stating the services we thought we were getting were misleading and untrue. Mid-Level Operations & Client Customer support were nonexistent to solve these issues, and furthermore, foreign operators were pushed into the system to slow the pace of feedback and assistance needed.

In addition, the operators wouldn't fully grasp the important help Plaintiffs would need; but rather take payments only; & not understand the needs of the consumers. As this was the reason the company shifted & removed a lot of the admin staff operators overseas. And let them /fire & terminate for reasons due to work ambiguous termination or not making them available to assist consumers for fear of retaliation of feedback by consumers seeking to ask for the

previous team we spoke to also. And a lot of people are constantly changing roles, leaving, or not working as certified account reps. A lot of the phone call operations were pushed overseas to prevent the pile-up of consumer complaints they never fully acknowledged. Lastly, the Defendants, a collective group, knew of these issues as operators that pushed the point scheme because it allowed them to get the point system to get some raises and promotions due to sales they further went. Other staff may speak at conferences, address the public as consumers on notable changes to the company, or participate in community events, but the company pushing fake overcrowded, overloaded destinations as a whole was wrong and illegal. It also compounded the management's problems; allowing this to spin out of control; and was seen by but felt, by the unknowingly innocent Plaintiff, in its marketing scheme & illegal, unlawful, and prohibited sales and high-pressure tactics to deliver on Defendant's plans.

- <u>Affiliated Agent: Broadridge Corporate Issuer Solutions</u> for (Defendant of the Wyndham Group). The basis for this complaint against the Defendant Agent was that the agent asserted that the business registration was sound, legal, and ethical on its prima facia of adhering to compliance agreements of contract laws established in the City of Manhattan and doing business in the state of NY. Namely, according to the SEC report, the company's organization operates & was held in downtown NYC, New York, and HQ in New Jersey, and Incorporated in Delaware.

As a result, the business, and its service Defendant organization, as a corporation, didn't keep the business updated & failed to work closer to ensure customer service actions complied. The purpose was to ensure the agent kept its business compliance for its affiliates/ customers up to date as it gives the preponderance of business lacking proper documents of the business records & its impropriety with no information available to consumers. The business failed to share and produce viable, accessible public data to reduce risk and fraud actions as a business, & to the public and provide for minimal shared interest public account information to the disposition of its business efforts. As Plaintiffs, the agent conspired to hide information to support the Wyndham Corp, as a Defendant, also as a foundation to business laws in New Jersey & this case, only focusing on New York. So any consumers wouldn't realize their business dealings are being moved to New Jersey on a separate set of books, record keeping & or any dealing with the money paid to the company by consumers being the Plaintiffs, isn't going to the benefit what is sold to consumers in New York, it's a scheme of maneuvering liability and excusing asset losses by devaluing consumer revenue sales sold in New York. Why? Because the company hires registered agents to act as required by law to establish a registered agent intermediary. All while the real company business is being moved elsewhere to Delaware, where they pay fewer taxes on revenue and hide the sales of points sales and timeshares under the disguised Barclay credit card; meanwhile and mainly customer's don't and can't get a real story of whom to communicate with. The contracts and legal business requirements are not fully met, as the Defendants have no confirmed registered agent not noted & provided to the Plaintiff NY consumer, vice in New Jersey. The contract accords and all arrangements, as a business, are required by NY Law. And potentially caused alleged conflicts of revenue reporting, bias, and the lack of informed insurance obligations as a business; to protect its consumers from negligence & fraud, which it is required to maintain and have earned through consumer's business sales. It also is relevant because the funds generated and obtained by the agent helping this company in its business dealing is being helped to be hidden funds & assets from consumers /its Plaintiff, which is aligned to the initial business unit as an entity operating in the state, by the Agent – Defendant. Due in part to the appearance of hidden information, the lack of objective compliance transparency, and its revenue outlays being paid, obtained, stolen, and acquired by the Wyndham HQ and its CEO and sub-entities, all as Defendants. In addition, this appears to be fraud in

plain sight. It also requires & ensures all clients are aware that the company is operating fairly, legally, and honestly if inquiries are asked, questioned, & simple information is available to the public since it sold services through this medium of its required exercised activities, of doing business, as it was. Next, the Defendants were required to be and have met as of the Effective November 12, 2021, the Department of Financial Services amended Part 20 of the Official Compilation of Codes, Rules, and Regulations (Regulations 9, 18, and 29), mandating the completion of certain courses to renew the insurance license. Of the 15 credit hours of instruction required following Insurance Law Section 2132, the licensee shall satisfactorily complete courses or programs of instruction or attend seminars, as the superintendent may approve, that provide: a.) at least one hour of Insurance Law instruction, b.) at least one hour of ethics and professionalism instruction, c.) at least one hour of diversity, inclusion, and elimination of bias instruction. Plaintiffs has determined that as consumers key biases exist and are clear diversity issues of discriminatory actions leading to taking advantage of elderly citizens in NY, by overcharging, overloading & over pricing. So, for this reason, we, the Plaintiffs, have no data provided to us that they ever met compliance guidelines to ensure our products and services were safe and protected as consumer sales & services, before or after doing business if the agent cannot ensure customers are searching for information. To this end it was identified; including ensuring consumer information traversing their networks, data centers, and storage devices meet the required requirements of Cybersecurity: All entities and persons regulated or licensed by the New York State Department of Financial Services are required to file various cybersecurity notices, which their data isn't present protected for this entity of actual attendance & compliance, & training. Consumer - Plaintiffs protection must be adhered to defend the highest possible threats, and those also conform to company practices to address ethical practices of information technology, business & legal, and commercial operations. Thus this ties into the required preservation of why the Federal Trade Commission Act (FTCA) supports consumers; notably the Defendant of Wyndham CEO and leadership pushes the consumers to think they are present as a major advocate of investor inquires as noted from the adverts and brochures as noted on the (Evidence noted, Ref Brochures for Defendant Time Share 2023). As this very unique contrast to see the Registered Agent as the handler of Investor Relations and for this reason we allege they are both liable for this guilt of these allegations noted based on its operating practices; which are not normal. However, what we see here is the mere assistance of a company leveraging all facets of its final reach to exploit customers. And the relationship is clearly established as such. The investor relations (IR) department is a division of a business, usually a public company. The fact that the Defendant and its Main Corp Defendant is aligning themselves in this manners is a major Investor Relations (IR) lead is very much not normal in business; its amount of risk, negligence and exposure of corruption points to coercion and fraud through this arrangement department is a division of a business whose job it is to provide investors with an accurate account of company affairs, as consumer we have been taken advantage of my faulty deceptive charges and over commitments of purchases that are not truly worth its value of what is sold and promoted through all of these companies. Lastly, the value of the time share is about 11 times more expensive and is oversold based on its relevant services of promotional, advertisement, & business consumer product's advertised.

The timeshare cost is never taken lightly, and the Defendant had a required legal commitment via contract to adhere to the following business ethics and moral principles of sales:

- Defendant ignored the facts of its obligation carelessly based on its receipt of massive payments and costs paid by Plaintiff, the Defendant owed that Plaintiff a duty of care reasonable expectation of the contract agreement. See payments lists.

- Defendant breached that duty of care and rigorously extorted funds for personnel and business commercial stock manipulation and merger acquisitions yet not allowing consumers to have full actual ownership as was expected based on the contract;

- Plaintiff suffered significant medical heart, and financial & economic ruins based around injuries impacted by restricting ownership uses with no regard for care and financial liabilities of its consumers as Plaintiffs; they owed paying Plaintiffs; and moved to address and endorse profitability and assets over ownership responsibilities they inherited as consumers.

- The omissions, disclosures left out, and its inability to provide any accounting forms as payments are made to accounts are accurately prepared, sent out to consumers, and don't exist fully. These injuries resulted from Defendant's breach of duty, contract obligations, and false hopes they left their Plaintiffs with overpayments of cost, fees, and extensions companies do every single time. In addition, was manipulated and retooling of contract vehicles unknown to consumers; to further purchasing & to showcase how we had two contracts and never knew that at all, but constantly paying for nothing at all and worthless points. When one agreement reflected significant gaps in options and services never fulfilled.

As such, the Defendants acted with negligence by not prohibiting the prevention of unfair practices from occurring in the form of consumer citizen sales and are a risk to ethical public business practices. The Plaintiff feels unfairly targeted like so many citizens of high-pressure tactics and aids to push toward business solicitations based on an institutional financial flow of data of minorities, known as Business Intelligence (BI) through its entity firm and provided to & shared among its billed the HQ of Wyndham and its whole as Defendants. The laws prohibiting consumers as Plaintiffs from being taken advantage of through deceptive or unfair trade practices activities are federally supported to benefit consumers & cybersecurity is a compliance action sharing the mutual interest of data protection for businesses. At all times herein mentioned, all Defendants were co-conspirators, agents, servants, employees, and joint-ventures of each other and were acting within the course and scope of said conspiracy, agency, employment, and or the joint-venture and with the permission and consent of each other, as a business.

3. **Plaintiff** Parties A. Ms. Sandra L. Cullum, 2770 West 5th Ave. Brooklyn , NY 11224 Tel#646-229-5032, Email: sbrwnsugah@aol.com

Plaintiffs Observed and was a Victim of Wrongful Fraud of Deceptive & Manipulative Trade/Business Practices

- o Wrongful Time Share Assignment timeshare visit temporary /provisional hold of credit card payments and monetary allocation of deceptive payments delivered & Used high-pressure sales tactics to pressure you into buying; Misrepresented what you would receive as part of the ownership
- o Told you that the timeshare is an investment opportunity; in fact is clearly isn't it's a scheme and fraud
- o Did not fully disclose the cost of maintenance fees and/or special assessment fees
- o Did not thoroughly discuss financing terms & did not disclose your right of rescission

Payments:

**TOTAL PAID:** Plaintiff B. - Payments     $334.18 x 6=   **$2,005.08 +**
Plaintiff A.- Payments        **$124,049.70**
OPENING Initial Payment Balance –        **$7,362.25  Paid by Credit Card=**

**$ 131,911.95 +** $11,289.70 Not. Auth. CC Chx.
February 2019 – Present. 2/3/2023    By The Plaintiff
**$ 143,201.65**

**Plaintiff** Parties B. Ms. Deirdre Saleh, 2675 W 36Th St., Brooklyn, NY 11224, Tel#: 347-244-2753, Email:
deedee403@gmail.com

- o  Victim - Wrongful Time Share Assignment & Timeshare visit temporary /provisional hold of credit card
  payments and monetary allocation of deceptive payments delivered.
- o  Wrongful Fraud of Deceptive & Manipulative trade/Business Practices because the family already had a
  time that was mis-represented.
- o  Used high-pressure sales tactics to pressure you into buying
- o  Misrepresented what you would receive as part of the ownership
- o  Told you that the timeshare is an investment opportunity
- o  Did not fully disclose the cost of maintenance fees and/or special assessment fees
- o  Did not thoroughly discuss financing terms
- o  Did not disclose your Right of Rescission
- o  Payments: $334.18 x 6= $2,005.08  Discuss the Funds requested back

Plaintiff Individual Lawsuit Action – Established by Plaintiff alleging failure to Perform in the following actions
Negligence, seeks $376,000.00 Individual (Judgement Compensatory, Injury, Pain & Suffering of Financial Losses) -
Class Action Laws: Defendant $15.4 Billion Dollars at = 500K+ Consumers at $30,000 at a minimum to include what
loss the major financial losses Plaintiffs suffered at the hands of the Defendants; & what individuals show case what they
paid for timeshares they can't use.   Plaintiffs are requesting Default Judgment, Summary Judgment, Judgment on the
pleadings, Judgment.  However, consumers are paying significant more money in the neighborhood of the tens of
thousands & in some cased hundreds of thousand's and the figure analytically could be much higher than anyone could
foresee.

All of these Defendant's personally lead and engaged the organizations directions who conducted these actions,
led, assisted, and formed the basis of the Class Action Suit of $15.4 Billion, & the Personnel suit submitted by the
Plaintiffs.  Namely, the Defendant conspired a misleading contract led to the defrauding & misrepresentation of monies
paid by the Plaintiffs, as cost & fees of at present <u>TOTAL PAID: $143,201.65 January 2019</u> – Present in total.  And the
agreement was also paid in full by its defrauding, of the initial contract at $37,574.00, which included Wyndham
waypoints paid in full. But Defendants still refuse to continue to terminate the contract & overcharging Plaintiffs, to this
very day and won't terminate it to the present day; in which they ignored the Plaintiffs Termination paperwork.  At
numerous times, the Defendant sought to extend the contract without our authorization, generating a second contract on
top of the first one & didn't allow you to achieve ownership like it was advertised and no title deed.  Plaintiff's as
consumers, we never asked for a second contract, & it was abusive how they manufactured a new contract without our
knowledge. This was fraud in sales & marketing of the sales/business-related; also seen as negligence, all centered on
false advertisements as it was addressed.  The Defendants lead a major theft scheme that continued to shape a basis

wrong doing. Telemarketing Sales Rule (TSR): Prohibits certain deceptive & abusive practices in telemarketing, which can include the use of high-pressure sales tactics and the failure to disclose material information; these sales left the consumer with more questions and not clear messaging of what it was obtaining in a formal contract purchase, a family's lifesaving was defrauded.  The Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA): These laws require certain disclosures to be made to consumers in connection with the sale of timeshares and give consumers the right to cancel the contract within a certain period of time.  No appropriate contract vehicle & its list of data was not complete: It is missing information, procedures as a process to terminate, as the required disclosures of data on sales and termination of contract relevant, pertinent to the rescission and contract financials of these is so unorganized.

The Plaintiff believes the Federal Mail and Wire Fraud Statutes: Plaintiff feels people are miss using advertisements & mail or wire communications to defraud others, including defrauding Plaintiffs them out of money or property this was rightfully ours. This also includes the fact that Defendant conspired & acted with malice and fraud; consistently overcharged Plaintiffs accounts which were overcharged; and no balance on the current charges constantly charging based on what was purchased was extremely clear and confusing at best; overstated years, based on cost and evaluated assessed value of the contract. This law can be applied in cases where fraud is committed through mail or electronic communications as they are constantly & continuously billing.  The Fair Credit Reporting Act (FCRA): Law regulates the collection, dissemination, and use of consumer PII credit information, & it requires companies to provide consumers with notice and an opportunity to dispute inaccurate information.  We are not allowed to dispute these actions, and the company doesn't act on these issues brought to their timely manner attention, as evident to our situation today.  The Defendants all conspired to disrupt credit, overcharge, and place more constraints on Plaintiff's credit actions. And then sending threats to mess up & muddy credit reports for not paying for something we didn't ask for, as innocent victims as Plaintiffs.

4. Next, the Plaintiffs suffered numerous issues & significant harm, injuries, financial duress to unexpected costs, and even medical trauma due to these improper forced charges placed on the Plaintiffs across many areas of negligence.  In contract law, a "major material" breach of contract is a breach (a failure to perform the contract) that strikes so deeply at the heart of the contract that it renders the agreement "irreparably broken" and defeats the purpose of making the contract in the first place. First, this factor can be seen from the improper handling & facilitation of legally mandated paperwork resulting from an intent to defraud the Plaintiff. All resulted in the Plaintiff Consumers and the establishment of a contract for monthly payments inconsistent with a purchase of property being or in existence to the consumers' Plaintiff's rights to which its needs are being obtained.  The scheme undermines and acts deceitfully to steal money via a Ponzi scheme from elderly citizens through fraudulent endless point scheme activities associated with the monthly payments sent in by the customer.  Second, the funds being defrauded by the Defendants scandal and other related law concerns points to a record of different lawsuits that reflect and show improper management of services and requesting of hefty fees not previously stated, exorbitant, excessive, inflated, and constantly being modified with new costs and other irresponsible scandal & fraud like actions. All resulted in various forms of contract violations to deprive people of money & assets without their approval, consent, or endorsement. Defendants marketed, overstated, and sold its Time Share "as safe, reliable yet all things fair, clean & new property built for home purchases available, accessible, & safe living" with

no hassles & just the opposite. Purchasers of these phony timeshare point plans and document fee schemes to Plaintiffs believed that they were buying actual solid property access and residential units that met or exceeded requirements in the United States and were compliant with Federal laws. However, Defendants intentionally programmed its Time Share to dup, steal & act in a corruption of illegal actions coordinated to activate new contracts add on's, and build business revenue wealth across credit card inflated changes to modify the plans to benefit its increased asset and fiscal strangle on thievery of consumers. When in fact, the properties were sold hundreds of times, and to get access to your retirement home is never going to happen, with the benefits would never be realized. The Defendants were intentionally withholding represented properties, charging fees, and extorting mandated monthly payments as money via this concocted manipulation plan and deceitful lies, but charging money.

- For millions of Plaintiffs, mindful fiscal consumers thought they were making true purchases as conscious consumers. The purpose of buying a retirement home is a dream was denied – that is, they were deprived of the consumers of savings, robbed of financial money as their civil liberties, the right to rescission was never honored, and a lack of disclosures was withheld based on what was agreed to buy or so they thought. The extent to which the Plaintiff was injured was clear & the Defendants as perpetrators intentionally, deliberately & purposefully targeted citizens of New York City and in other states where ongoing and past lawsuits reflect a shadow pattern of major federal corruption concerns. Defendants used multiple plans to enact and deceive the noted Plaintiffs. As in the case of the Plaintiffs Cullum & Saleh, as parties can be adequately & should be compensated back for the part of that benefit of which they paid upwards of illegally & unlawfully where their rights were deprived, based on the breaches of actions. Notably, considering the egregious acts, Defendant did not have the space, residence, facilities, or land to accurately sell reliable accommodation's as a retirement future home; but expected funding to prop up their stock evaluations & holding of contract sales which equate to money wire fraud. Because Defendant could not fix the problem, a different scheme of worthless points on top of the monthly payments where introduced to ensure further indebtedness to the Plaintiffs. This resulted in and would consider the Defendants did, on numerous occasions, manipulate Plaintiffs.

- The consumers never knew that altered and additional costs at the business would result in new actions in the contract's plain language without their agreements or simple charges to their credit cards without permission would occur. As a result, the company wanted to obtain and seek any method to get & obtain payments by any means necessary. And just alone in January 2023, this had been occurring illegally without the Plaintiff's authorization on payments, costs, & fees, which is the illegal & unlawful but prohibited use of credit card charges via the Plaintiff's Barclays account - Plaintiff Cullum. Lastly, the laws are there to protect against contracts fraud and manipulation; agreements would be added to change and alter the contracts and further swindle other funds from the consumers via negligent contracts language; if one were to try to use what was paid for; which is a violation of federal laws; and to have breached the contract in a major material way. This is a clear area in which the extent to which the Defendant party has failed to perform or to offer to perform and placed undue stress, harm, and further factual financial burdens on consumers, as Plaintiffs that have and will continue to suffer disastrous economic, monetary & financial security. As Plaintiffs, we seek to ask the federal court to see if the breach was intentional & resulted from bad faith or unfair dealing, which violates the sales and contract laws for real estate.

5. Specifically, the Defendants are not authorized to sell in Florida, had no certified realtors since it was deemed as property real-estate property with no valid license presented to the Plaintiffs at the time of the initial contract, or established any documented letters that were disclosed resulting in a breach, in NYC, by that specific agent Defendant's representatives. Under section 443 of the NYC State law, there was a violation, disclosures not appropriately made, misleading, inaccurate; nor were the agents selling property from a certified Florida Agent License, in the State of Florida present in New York City present in Mid-town Manhattan. The New York law requires you, the Defendants, the aka the Seller, to disclose known home defects to the buyer and all regulatory presented data as such to the buyer, by which they presented an unregistered timeshare deal in which property was identified & recorded for a contract. Or furthermore, no deed of trust existed or was formally written via printed data. Under real estate laws in NY state, you, as a New York home seller, could be found liable to a buyer, aka the Plaintiffs, for having failed to disclose certain property conditions, or defects, in the course of the sale, meaning no firm or access to property one is expected to pay for.

   A.  New York Real Property Law, Sec. 443: Disclosure Regarding Real Estate Agency Relationship; a form which delineates who the seller is, its position, and relationship and that it noted to the seller, buyer, of real property, and the listing agreement.  Broker's Agent means an agent that cooperates or is engaged by a listing agent, buyer's agent, or tenant's Agent (but does not work for the same firm as the listing Agent, buyer's Agent, or tenant's Agent) to assist the listing Agent, buyer's Agent, or tenant's Agent in locating a property to sell, buy or lease respectively, for the listing Agent's seller or landlord, the buyer agent's buyer, or the tenant's agent tenant. In addition, the Agent doesn't act in good faith to provide direction to assist Consumers, and it was portrayed as a scheme to formally engage in contract fraud. Defendant's: In this case, Defendant violated many violations to the provision; because Plaintiff was never advised that the areas are prone to severe bad weather also & not disclose actual locations & documenting its negligence of availability to these relevant facts.

   1.  Liability of sales tactics misleading fraudulent, fake, and deceitful untruths about major commitments, debt, liabilities & obligations of real property. All being land, home, and/or one can't use along with fees, extended obligated payments, a fraudulent point arrangement scheme that was misleading during the presentation & the deceitful presence of the misleading brief. These activities are facts and present a poorly organized negligence scheme of points that puts consumers at risk, with minimal & very limited options but more dangers.

   ▪  Other genuine defects are <u>noted due to the natural causes of weather issues in Florida and hurricane alley; ref. Provisions 443-A.,</u> which stated all apply: Section (b) denotes the property is or is suspected of having been the site natural causes of bad weather issues such as storms would be applicable.

   2.  In addition to NY jurisdictions, it is against the law to solicit a timeshare without providing mandatory written information, we allege this occurred without the formal written disclosures. Such information includes the property's real & confirmed actual address, offer price, and any constraints or prerequisites that must be satisfied before the timeshare transaction, which it wasn't; because it was a sale of funds and obligations enacted real property upon a sale.

   3.  In Section 462 of the NY Law, ref. to New York Real Property Law: Sec. 462 – Property

Condition Disclosure Statement: deemed vital instruments of disclosures for consumers, and relevant for a Plaintiff.

6. The Defendant refuses to allow the Plaintiffs or anyone as consumers to access paid facilities they own. And in some cases, won't give you the dates you ask for and always make excuses for unfair fees and undocumented costs that arise as additional costs, but are subject to paying for a scheme of paying for fees & payments for services that are never rendered. And is always full and is designed to prohibit opportunities & chances of the Plaintiff's arguments saying they aren't available. Then they refuse to give any extensions, but fees mount and rack up when no services are rendered. The communication for payments is made but not for customer service involving concerns of negligence and financial corruption. To include the illegal or unethical practices that have been reported in the timeshare industry as a whole include:

   A. Collecting payments well beyond the contract period and failing to allow cancellation without delivering the promised timeshare ownership as noted per the contract

   B. Failing to disclose all the relevant specified information; that further led to conspiracy manipulation of contract terms, to the credit card account negligence strategies, and the point systems schemes to undermine Plaintiff's as a consumer was evident when Defendant misled and constantly left the room to misrepresent disclosure information numerous times, and failing to answer vital and relevant questions; required by law & promising to deliver data that was never provided. This alone was manipulating, maneuvering in an intended intentional scheme through the terms and conditions of the contract. Defendant repeatedly failed by wrongfully not disseminating, delivering, and providing clearly documented, consistently reliable, valid data presented and various forms of messages & data that were never provided; by failing to disclose important information about the purchase or ongoing costs of ownership & not adhering to legal obligations that were a result of the fundamental actions. Additionally, Defendant shows absolute egregious failures to provide truthful to provide required documented disclosures, including not accurately providing further significant data, documents, and the mandatory negligence of losses in the actions to provide required disclosures under state or federal laws, such as the Real Property Law or the Truth in Lending Act.

   C. Failing to honor the right to cancel a timeshare purchase within a certain period of time

   D. Failing to disclose known defects or issues on the property or failing to disclose all costs associated w/ the sale.

   E. Making false or misleading statements about the ability to rent or resell the timeshare

   F. Misrepresenting the benefits or value of a timeshare purchase;
      and making known misleading, selling, presenting & knowingly giving fraudulent information regarding the statements about the sales benefits, data, information associated with the timeshare, and the conditions, which included the sales property, and the terms, was not accurate and very misleading to the Plaintiffs.

   G. Using high-pressure sales tactics to convince individuals to purchase a timeshare

7. Illegal Problems Ensued & Resulting in each Defendants' Negligent Areas: All stemming from timeshare law violations, including:

A. Damaged Reputation of Consumers & Plaintiffs Safety of Security Assets/Confidence & Major Awareness of Final Losses, which equates to White Collar Criminal Theft w/ intent to Defraud: Timeshare companies that engage in illegal or unethical practices may damage their reputation, which can lead to loss of business, fines, penalties, and legal actions.

B. Difficulty Canceling the Contract: Timeshare companies may make it difficult or impossible for individuals to cancel their contract, achieve results and get any major forms of assistance, even if they are well within the Plaintiffs entitled legal right to do so.

C. Difficulty Getting out of the Contract: Even if individuals can cancel their contract, it isn't easy because the company withholds information to assist; & Plaintiffs may still be responsible for paying ongoing fees and maintenance costs and massive overcharges that occur due to negligent actions of roadblocks by the Defendant to us.

D. Difficulty selling or renting the Timeshare: Timeshare owners may find it difficult or impossible to rent or resell their timeshare, despite any representations made by the company during the sales process.

E. Financial Harm: Timeshare owners may incur significant financial losses due to illegal or unethical practices by the timeshare company, such as paying for a timeshare that is never delivered or being charged hidden fees and maintenance costs.

F. High-Pressure Sales Tactics: Some timeshare companies use aggressive and misleading sales tactics to convince individuals to purchase a timeshare, which can lead to buyers making a decision they later regret.

G. Legal Battles: Timeshare law violations can lead to legal battles, which can be costly, time-consuming, and stressful for the individuals involved.

H. Misrepresentation: Timeshare companies may make false or misleading statements about the benefits of ownership, the ability to rent or resell the timeshare, or the overall cost of ownership.

8. Key Fact relevant to this case are all important information noted above and articulated in detail of this complaint as a petition of the further documented counts.

## Count II – State Laws: NEGLIGENT MISREPRESENTATION

A. Plaintiffs allege multiple negligent misrepresentations and omissions were made at the Wyndham sales presentations as alleged office in all major three locations of NY, NJ business operations & FL. The Defendant Wyndham entire group was negligent in making these false, sales and advertisements along with detailed misrepresentations and omissions and allowing its sales personnel to make them as a part of its business alleged pattern of corrupt schemes. It had a duty to supervise its sales force and it breached that duty or ethical, moral & legal business operations. The Defendant It is also liable for the negligent misrepresentations through the doctrine of respondent superior and agency law. Defendants as a whole collaborated together as Wyndham's actions were willful, fully wanton, and malicious; so as to allow the recovery of punitive damages. Plaintiffs believe that the NY laws and regulations that govern the timeshare industry must address and speak fairness to protect consumers from illegal or unethical practices are some of the laws & regulations in New York that may apply to timeshare include:

I. The New York State Department of Law's Bureau of Consumer Frauds and Protection: Defendant acted with malice and negligence, against the Plaintiff, as a company which engaged in illegal or deceptive practices as a business.

II. The Martin Act: Plaintiffs asks for protection from the Defendant when their funds were miss used under a sale of assets, which further was funding personal greed and not paying for what we thought we were getting; rather propping up phony timeshare sales and securities, revenue, & company profitability of including timeshares; as it was sold and a breach of contract was enacted.

III. The New York State Real Property Law: Governs the sale of real property, including timeshare interests, and it requires certain disclosures to be made to prospective buyers, as the Plaintiffs believes the disclosures where not made; but rather withheld.

IV. The New York State General Business Law: The Defendant conducted acts that are prohibitive of false advertising and deceptive business practices, and it gives the attorney general the authority to bring legal action against companies engaged in such practices.

V. The New York State Executive Law: Empowers the Attorney General to bring legal action against companies that engage in discriminatory practices, including discrimination in the sale or rental of timeshare properties.

## Count III – Federal Laws:

B. Federal Actions Alleged:

1. Plaintiff and the Class contend that it is unlawful for the Defendants Wyndham to collect from their customers a document fee, in that receiving consideration for the preparation and processing of legal documents by an unlicensed individual is illegal and constitutes engagement in unauthorized law business and the unauthorized practice of law.

2. Further actions violated during the initial, ongoing, and subsequent actions by the Defendant observed where violations of the following to conspire against the merit of fraudulent, fake, deceitful & unwilful activity & the other time share specific against the Plaintiff & other US Citizens.  Federal laws that prohibit illegal, deceptive, and manipulative practices found to be suspected of related to distrust, financial crimes against the elderly and timeshare contracts, based on interactions, activity & findings noted by the personnel, staff, and leadership of the Plaintiffs entire organizational parties from the leadership to midlevel and phone operators. Some of these laws include:

I. The Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA): These laws require timeshare companies to disclose certain information about the terms of the loan and the costs of the timeshare, and require them to provide a three-day right of cancellation.

II. The Telemarketing Sales Rule (TSR): This rule regulates telemarketing calls and prohibits certain deceptive and abusive practices, including the use of high-pressure sales tactics and the failure to disclose material information.

III. The Elder Justice and Abuse Prevention Act: This act makes it a federal crime to financially exploit elderly individuals and provides funding and support to detect and prevent such crimes.

IV. The Dodd-Frank Wall Street Reform and Consumer Protection Act: This law prohibits unfair, deceptive, or abusive acts or practices in the consumer financial markets, this act also created the Bureau of Consumer Financial Protection (CFPB), which has the authority to take action against companies engaged in such practices.

V. The Fair Housing Act: This law prohibits discrimination in the sale or rental of housing, including timeshare relevant of any type of dwelling properties, on the basis of race, color, national origin, religion, sex, familial status, or disability.

VI. The Fair Credit Reporting Act: This law regulates the collection, dissemination, and use of consumer credit information, and it requires companies to provide consumers with notice and an opportunity to dispute inaccurate information.

3. The Racketeer Influenced and Corrupt Organizations Act (RICO): This law makes it a federal crime to participate in a pattern of racketeering activity, which can include fraud, extortion, and money laundering. RICO can be used to pursue both criminal and civil actions against individuals and organizations that engage in time share fraud.

4. The Federal Trade Commission Act (FTCA): This law prohibits deceptive or unfair trade practices, and it gives the Federal Trade Commission (FTC) the authority to bring legal action against companies that engage in such practices.

5. The Telemarketing Sales Rule (TSR): This rule prohibits certain deceptive and abusive practices in telemarketing, which can include the use of high-pressure sales tactics and the failure to disclose material information.

6. The Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA): These laws require certain disclosures to be made to consumers in connection with the sale of timeshares and give consumers the right to cancel the contract within a certain period of time.

7. The Federal Mail and Wire Fraud Statutes: These laws make it a federal crime to use the mail or wire communications to defraud others, including defrauding them out of money or property, this law can be applied in cases where the fraud is committed through mail or electronic communications.

8. The Fair Credit Reporting Act (FCRA): This law regulates the collection, dissemination, and use of consumer credit information, and it requires companies to provide consumers with notice and an opportunity to dispute inaccurate information.

9. That during and after the contact with Defendants during the sales process, Defendants through its representatives and/or agents, made representations to Plaintiff both family Brooklyn NY. Invaluably speaking, the conduct of Defendants in the foregoing respects was willful, intentional, and malicious and without just cause or excuse, entitling Plaintiff Cullum & Saleh to actual and punitive damages, attorney fees and costs herein incurred. In which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact which are specifically described in the subparagraphs above in great details, including but not limited to:

a. That Plaintiff both women could sell their timeshare for a profit;

b. That Plaintiff would be attending a 90-minute presentation, and the presentation lasted much longer. Plaintiff was detained at the sales presentation against their wishes for a lengthy period of time. The extended, unreasonable, lengthy time period of the sales presentation constituted duress and coercion to force Plaintiff to make a purchase before they were allowed to leave the premises;

c. That Plaintiff was attending an "Owner's Update" meeting when in fact, Plaintiff was attending another sales presentation, and Plaintiff was subjected to another high-pressure sales pitch.

d. All claims are typical and represent fair grievances amount to illegal conduct actions & misrepresentation's.

10. The Defendant has had many levels of the distrust and harm to the Plaintiffs, as noted by its omissions involving Plaintiffs records, miss us e of credit card charges, systems issues not being updated with data and clear violations of failures to provide consumers with timely information upon asking for assistance. And are very clear & all often as a consistent msg portrayed in the business of the Defendant. Yet it's too common as the company Defendants; refuses to aid and assist in the matters and have all but ignored paperwork & its terminations requested. All that are of common law fact with respect to others as a Class Action lawsuit of its class action members is petitioned. Meanwhile, the Defendant of the entire group of Defendants at Wyndham has made these actions an uphill push for someone like me who has be swindled & defrauded who have no way to seek assistance or any forms of help, the courts are my petition. For others, entire generations of wealth are being eroded as any family's ability to survive is crippled by the negligence it causes on families, improper business violations & hurtful ethics in our everyday community, the Defendant causes. To this end also, it is the credit reports on the Plaintiff's report account despite being on time, and often others overwhelmed by these shady tactics and to do this forces them as Plaintiff's consumers to not fight for standing up against corporate greed & for important principle rights the Defendant takes from consumer's by wanting to damage their credit rating. The legal, permissible & allowed process of law should warrant accurate, fair relief for so many and be entitled a sizeable, appropriate, compensated relief and recover their losses due to fraud and the apparent breach of contract occurring by & what has been conducted by the Defendants. The omissions & explicit misrepresentations made to Plaintiffs by the Defendants of Wyndham are typical of significant misrepresentations made to other Class Members.

The Defendants exact fraudulent representations and omissions are made time and time again with uncanny regularity to Class Members and perpetrated in scrupulous defrauding ways. And even in my particular portion of this suite, my money was taken from me, I had no idea. Defendants at Wyndham market and sells vacation ownership interests in the form of points, property & other action, provide consumer financing in connection with the sale of point issues, provide property management & in some cases, overcharge services to the purchasers, and develop and acquires vacation ownership resorts. In the Wyndham model, participants purchase points that are supposed to be the currency to stay at any Wyndham or affiliated resort worldwide. Fundamental to the Wyndham sales and marketing pitch is those purchasers will have a dizzying array of choices and can remain at their desired property wherever it might be. Purchasers buy points to travel to their desired location, whether in Florida, Scotland, Louisiana, Hawaii, or elsewhere. Desired destinations are not available at the expected time and have to be booked sometimes as much as a year in

advance, assuming they are even available. The sales pitch is false and misleading. The business practice of Wyndham is to focus on selling points rather than managing the destinations and making them available to members. Wyndham makes more money by selling new timeshares than by making accommodations available to existing timeshare Owners. Wyndham members find that there needs to be more availability. When they complain, Wyndham responds that they need to buy more points. Wyndham members are subject to a lifelong frenzied marketing pitch to buy more points & upgrade their membership, and it simply needs to be terminated due to our findings of critical facts.

### PRAYER FOR RELIEF

11. Wherefore, Plaintiff's prays for the following relief on behalf of herself , her family and all others similarly situated & asked respectfully that the Honorable Court hear and determine the matter and enter Judgment in favor of Plaintiff:

    A. An order certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiffs as Pro Se represent themselves; Class & ask for the courts understandings:

    B. For an order that Defendant be permanently enjoined from engaging in the unlawful activities and practices complained of; for cancellation of all Class Member contracts with Wyndham Corp & its subordinate entities/companies; for restitution of all monies paid to Wyndham by the Plaintiffs, time, losses, compensation, awards entitled and all expenses as such noted;

    C. Plaintiffs prays this Court enter judgment in his favor against the Defendants, for an order rescinding the harmed rendered by the timeshare contract based on the damages on the document fees; for damages that are fair and reasonable to restore the Plaintiffs Cullum & Saleh to the position both of the Plaintiff's was prior to purchasing the membership.

    D. For compensatory damages, financial liabilities, punitive damages, civil restitution, pain and suffering along with the immense emotional stress to be applied, accordingly as requested.

### DEMAND FOR A JURY TRIAL

12. Plaintiffs demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure. Dated: Feb. 5, 2023

Respectfully submitted,

*Sandra Cullum*

Plaintiffs, Parties A. | Ms. Sandra L. Cullum,

*Deirdre L. Saleh*

Plaintiffs, Parties B. | Ms. Deirdre Saleh

**PAYMENTS MADE TO WYNDAM LEDGER  INFORMATION: REF. CONTRACT**

OPENING BALANCE – $7,362.25 –January 21, 2019, Yr.

## **PAYMENTS:** The Defendant is just costly billing the Plaintiff with no regard.

## **YEAR 2019**

Noted – a high impact charge was Credit Card Charge of $11,289.70    On 12/5/2019 Initial unauthorized & Illegal Credit Card Charge was not authorized, and unknown to the consumer, as we recently found it and uncovered the charge noted, after extensive review.  Not Authorized Consumer Charge: Not Authorized or approved. Dispute of Charge in progress & requested as of 2/6/2023 after uncovering the information from 2019, formal audit of the account.  As it appears someone charged her card without consent and generated a documented recx with consumer /Plaintiffs information.

$2,500.00, February 13 – March 12, 2019

$2,500.00, March 13 – April 12, 2019

$2,000.00 April 13 – May 12, 2019

$1,000.00 May 13 – June 12, 2019

$1,500.00 June 13 – July 12, 2019

$1,500.00 July 13 – August 12, 2019

$2,000.00 August 13 – September 12, 2019

$1,500.00 September 13 – October 12, 2019

$1,500.00 October 13 - November 12, 2019

$1,000.00 November 13 - December 12, 2019

$7,000.00 December 13 – January 12, 2020

TOTAL FOR YEAR 2019 - **$23,500.00**

## **YEAR 2020**

$2,500.00 January 13 – February 12, 2020

$3,000.00 February 13 – March 12, 2020

$2,500.00 March 13 – April 12, 2020

$1,500.00 April 13 – May 12, 2020

$1,500.00 May 13 – June 12, 2020

$1,600.00 June 13 –July 12, 2020

$600.00 July 13 – August 12, 2020

$1,000.00 August 13 – September 12, 2020

$1,200.00 September 13 – October 12, 2020

$1,400.00 October 13 - November 2020

$1,500.00 November 13 – December12, 2020

$1,600,00 December 13 – January 12, 2021

TOTAL FOR YEAR 2020 - **$19,900.00**

## PAYMENTS

## YEAR 2021

$1,600.00 January 13 – February 12, 2021

$1,600.00 February 13 – March 12, 2021

$1,600.00 March 13 – April 12, 2021

$1,600.00 April 13 – May 12, 2021

$1,800.00 May 13 – June 12, 2021

$1,500.00 June 13 – July 12, 2021

$1,600.00 July 13 – August 12, 2021

$1,600.00 August 13 – September 12, 2021

$1,600.00 September 13 – October 12, 2021

$2,000.00 October 13 - November 12, 2021

$1,600.00 November 13 – December12, 2021

$1,500,00 December 13 – January 12, 2022

TOTAL FOR YEAR 2021 - **$19,600.00**

## YEAR 2022

$1,600.00 January 13 – February 12, 2022

$1,600.00 February 13 – March 12, 2022

$1,600.00 March 13 – April 12, 2022

$1,500.00 April 13 – May 12, 2022

$1,500.00 May 13 – June 12, 2022

$1,500.00 June 13 –July 12, 2022

$1,500.00 July 13 – August 12, 2022

**(Bill this month reads "No Transaction Activity At This Time")**

$1,500.00 August 13 – September 12, 2022

$1,500.00 September 13 – October 12, 2022

TOTAL FOR YEAR 2022 - **$13,800.00**

Vacation Club offered a Promotion: of **$28,000.00** if paid in a certain amount of time – February 2020.  **Paid in Full April 13, 2022.**

## **YEAR 2023**

$623.73 December 13 – January12, 2023

TOTAL FOR YEAR 2022 - **$623.73**

**TOTAL PAID:**  Plaintiff A -  Payments **$124,049.70 – February 2019 – Present. 2/3/2023**

**&**

**TOTAL PAID:**  Plaintiff B. -  Payments       **$334.18 x 6= $2,005.08**  +

*Plaintiff A.-  Payments*            **$124,049.70**

OPENING Initial Payment Balance – **$7,362.25**  =

**$ 131,911.95 +** $11,289.70 Not. Auth. CC Chx.

**February 2019 – Present. 2/3/2023**

**$ 143,201.65**

_Sandra Cullum_
_Sandra Cullum_
Plaintiffs, Parties A. | Ms. Sandra L. Cullum,

_Deirdre L. Saleh_
_Deirdre L. Saleh_

Plaintiffs, Parties B. | Ms. Deirdre Saleh

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

# FORM 10-K

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the fiscal year ended December 31, 2021
or
☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the transition period from ____ to ____
Commission file number 001-38432

# WYNDHAM
HOTELS & RESORTS

## Wyndham Hotels & Resorts, Inc.
*(Exact Name of Registrant as Specified in Its Charter)*

| | |
|---|---|
| Delaware | 82-3356232 |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| 22 Sylvan Way Parsippany, New Jersey | 07054 |
| (Address of Principal Executive Offices) | (Zip Code) |

**(973) 753-6000**
(Registrant's telephone number, including area code)

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Stock, Par Value $0.01 per share | WH | New York Stock Exchange |

**Securities registered pursuant to Section 12(g) of the Act:**
None
(Title of Class)

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☑   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐   No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑   No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☑   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☑ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☑

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☑

The aggregate market value of the registrant's common stock held by non-affiliates of the registrant as of June 30, 2021, was $ 6.70 billion. All executive officers and directors of the registrant have been deemed, solely for the purpose of the foregoing calculation, to be "affiliates" of the registrant.

As of January 31, 2022, the registrant had outstanding 92,305,604 shares of common stock.

**DOCUMENTS INCORPORATED BY REFERENCE**
Portions of the Proxy Statement prepared for the 2022 Annual Meeting of Stockholders are incorporated by reference into Part III of this report.

ATTACHMENT AM4

 **WYNDHAM**
HOTELS & RESORTS

Log into Your Account 



## Welcome Wyndham Hotels & Resorts Investors

You can access your account information from our secure website by clicking on the Shareholder Login link, where you can view and manage the following:

--- View Account Information
--- View Transaction History
--- Buy & Sell Shares
--- View & Request Tax Forms
--- Manage Dividends
--- View Plan Documents


**Earnings**
❯

## Company Information

Wyndham Hotels & Resorts is the world's largest hotel franchising company by the number of properties, with approximately 9,100 hotels across over 95 countries on six continents. Through its network of approximately 836,000 rooms appealing to the everyday traveler, Wyndham commands a leading presence in the economy and midscale segments of the lodging industry. The Company operates a portfolio of 23 hotel brands, including Super 8®, Days Inn®, Ramada®, Microtel®, La Quinta®, Baymont®, Wingate®, AmericInn®, Hawthorn Suites®, Trademark Collection®, and Wyndham®. The Company's award winning Wyndham Rewards loyalty program offers over 97 million enrolled members the opportunity to redeem points at thousands of hotels, vacation club resorts and vacation rentals globally.

Wherever people go, Wyndham will be there to welcome them!

### Wyndham Hotels & Resorts Inc [NYSE:WH]

WH $78.35 0.06
Data is delayed by 15 minutes.



1d  1w  1m  1y

## Resources

### Need a Form?

W-9 ▾

### FAQs

Lost Certificates ▾

### Key Contacts

**Investor Inquiries** ▾

Broadridge Corporate Issuer Solutions
P.O. Box 1342
Brentwood, NY 11717
Phone: 877-466-6394
Fax: 215-553-5402
shareholder@broadridge.com

M-F, 9 a.m. to 6 p.m. ET

### Connect With Us

Visit our Media Center

 
 

ATTACHMENT AM5

# CLUB WYNDHAM

Owner name: CULLUM
Date: 12/5/2019
Member number: 203435090
Contract number:

## Ownership Review

| | | | |
|---|---|---|---|
| New points purchased today*: | 200,000 | Today's Purchase Price: | $ 37,200.00 |
| Use year / Deposit frequency: | Apr 1 - Mar 31 / Annual | Today's Processing Fee: | $ 349.00 |
| Inventory purchased: | CWA | Today's Closing Costs: | $ 25.00 |
| | | Today's Total: | $ 37,574.00 |

## Other Memberships and Enrollments

| | | Current Levels | Future Privileges**** |
|---|---|---|---|
| External exchange company: | RCI | Membership level: VIP Silver | Advantage Privileges |
| Internal exchange company: | Club Wyndham Plus | Temporary membership level: VIP Platinum | Champion Privileges |
| Plus Partners: | Yes | | |
| Perks by Club Wyndham: | Yes | | MyClubWyndham.com |
| Wyndham Rewards: | Yes | | VIP vacation planning: 866-884-4321 |
| Club Pass: | Yes | | Vacation planning: 800-251-8736 |
| Bonus Points | 300,000 | | |

Today's Incentive: **300,000 BONUS POINTS and 2 RCI WEEKS**

## Existing Ownership–Points Summary

| | | Points | Home Resort | Usage |
|---|---|---|---|---|
| Contract(s) not being traded: | Contract # 2511900113 | 200,000 | Annual UDI-CWA | Apr 1 - Mar 31 |

Contract(s) traded today:

| | | Including Bonus Points (temporary) |
|---|---|---|
| Total Wyndham Points eligible to make reservations | 400,000 | 700,000 |

## Your Financial Deposit Today

| | | |
|---|---|---|
| Today's deposits (and methods of payment): | Personal CC / Check | $ 11,264.70 |
| Closing Costs | Personal CC / Check | $ 25.00 |
| Total applied to contract today: | $ | 11,289.70 |

## Quality Assurance Only

| Loan Summary | | CURRENT | NEW |
|---|---|---|---|
| Loan balance with Wyndham for: contracts not traded today **** | $ | | $ 27,274.74 |
| Loan balance with Wyndham for: this contract | $ | | $ 26,284.30 |
| Total loan balance with Wyndham for: all contracts**** | $ | | $ 53,559.04 |
| Total loan payment amount for: all contracts**** | $ | 27,274.74 | $ 330.47 |
| Loan payment amount for: this contract**** | $ | | $ 416.37 |
| Total loan payments for: all contracts**** | $ | 330.47 | $ 746.84 |
| Auto Pay: Yes Auto Pay method: Personal CC / Check | | | |
| First loan payment date for THIS CONTRACT: 01/19/20 | | | |

## CLUB WYNDHAM Plus Assessment Summary (Maintenance Fee)

| | | | Monthly |
|---|---|---|---|
| Monthly assessment for: contract(s) not traded today | $ | | 119.67 |
| Monthly assessment for: this contract | $ | | 112.75 |
| Monthly assessment for: all contracts | $ | 119.67 | 232.42 |
| Auto Pay: Yes Auto Pay method: Personal CC / Check | | | |
| Next assessment payment due: 12/07/19 | | | |

Club Wyndham Plus Points Conversions
Convert ownership points to Wyn. Rew. points (prior to deposit, no back to back years, $99 conversion Fee/1,000 CVP pts = 400 WR pts) for up to:
160,000 Wyndham Rewards Points

Convert ownership points into maintenance fee dollars during first 6 months of use year ($210 /1000) for a value up to: $840.00

---

I have reviewed and agree with the information noted above.

I agree that I will be a member of the programs noted above under "Your Other Memberships and Enrollments." (Certain programs may carry additional enrollment and renewal fees. Please refer to the disclosure documents for additional information.)

I have reviewed and understand the attached Buyer's Acknowledgment.

I agree that I will be a member of CLUB WYNDHAM Plus and that I have reviewed and agreed to the terms of the attached Assignment Agreement and Use Restriction.

I have reviewed and agree to abide by the terms and conditions of the Enrollment Agreement.

| | | |
|---|---|---|
| _Sandra Cullum_ Owners Signature | 12/5/2019 | _[signature]_ Wyndham Quality Assurance Signature 12/5/2019 |
| _Dudd Cullum_ Owners Signature | 12/5/2019 | _Sandra Cullum_ Wyndham Quality Assurance Print Name 12/5/2019 |

Owners Signature

* Points total does not include existing Bonus Point contracts
** Points total does not include existing Bonus Points
*** The actual amount may be lower if today's purchase is added to membership with existing contracts not traded
**** The actual amount does not include any existing loan balances with any third party companies outside of today's purchase (i.e., Vacation Club Line of Credit, Wyndham Rewards Credit Card)
**** Enrollment in the new Privileges program, anticipated late 2020 (subject to change). Benefits are currently in development and subject to change. Existing Permanent VIP members will retain the unlimited housekeeping benefit upon launch of Privileges, which shall be non-transferable and subject to program rules, terms and conditions.

For Current Owners

Your owner website: myclubwyndham.com

| | | 12/5/2019 |
|---|---|---|
| _[signature]_ | | |

Owners Signature 12/5/2019

21516 (rev. 7.1.19)

DocuSign Envelope ID: 55D3595E-29C5-4490-BCDF-5D1A634U5U0B

# CLUB WYNDHAM

| | | | |
|---|---|---|---|
| Owner name: | CULLUM | | |
| | | Date: | 12/5/2019 |
| | | Member number: | 203435990 |
| | | Contract number: | |

## Ownership Review

| New points purchased today*: | 200,000 | / | | Today's Purchase Price: | $ | 37,200.00 |
|---|---|---|---|---|---|---|
| Use year / Deposit frequency: | Apr 1 - Mar 31 | | Annual | Today's Processing Fee: | $ | 349.00 |
| Inventory purchased: | CWA | | | Today's Closing Costs: | $ | 25.00 |
| | | | | Today's Total: | $ | 37,574.00 |

### Other Memberships and Enrollments

| | | | | Current Levels | |
|---|---|---|---|---|---|
| External exchange company: | RCI | Membership level: | 200,000 | VIP Silver | |
| Internal exchange company: | Club Wyndham Plus | Temporary membership level: | | VIP Platinum | |
| Plus Partners: | Yes | | | | |
| Perks by Club Wyndham: | Yes | | | Future Privileges**** | |
| Wyndham Rewards: | Yes | | | Advantage Privileges | |
| Club Pass: | Yes | | | Champion Privileges | |
| Bonus Points | 300,000 | | | | |

MyClubWyndham.com
VIP vacation planning: 888-884-4321
Vacation planning: 800-251-8736

**Today's Incentive:** 300,000 BONUS POINTS and 2 RCI WEEKS

## Existing ownership Points Summary

| | Points | Home Resort | Usage |
|---|---|---|---|
| Contract(s) not being traded: | | | |
| Contract # 2511500113 | 200,000 | Annual UDI-CWA | Apr 1 - Mar 31 |

Contract(s) traded today:

| | | Including Bonus Points (temporary) | |
|---|---|---|---|
| | 400,000 | 700,000 | |

Total Wyndham Points eligible to make reservations

## Your Financial Deposit Today:

| Today's deposits (and methods of payment): | Personal CC / Check | $ | 11,264.70 |
|---|---|---|---|
| | | | |
| Closing Costs | Personal CC / Check | $ | 25.00 |
| Total applied to contract today: | | $ | 11,289.70 |

## Quality Assurance Only

| Loan Summary | CURRENT | | NEW | |
|---|---|---|---|---|
| Loan balance with Wyndham for: contracts not traded today*** | | | $ | 27,274.74 |
| Loan balance with Wyndham for: this contract*** | | | $ | 26,284.30 |
| Total loan balance with Wyndham for: all contracts*** | $ | 27,274.74 | $ | 53,559.04 |
| Total loan payment amount for: contract(s) not traded today*** | | | $ | 330.47 |
| Loan payment amount for: this contract*** | | | $ | 418.37 |
| Total loan payments for: all contracts*** | $ | 330.47 | $ | 748.84 |
| Auto Pay: Yes Auto Pay method: Personal CC / Check | | | | |
| First loan payment date for THIS CONTRACT: 01/19/20 | | | | |

### CLUB WYNDHAM Plus Assessment Summary (Maintenance Fee)

| | | | | | Monthly | |
|---|---|---|---|---|---|---|
| Monthly assessment for: contract(s) not traded today | | | | | $ | 119.67 |
| Monthly assessment for: this contract | | | | | $ | 112.75 |

| Monthly assessment for: all contract(s) | $ | 119.67 | | $ | 232.42 |
|---|---|---|---|---|---|---|
| Auto Pay: Yes Auto Pay method: Personal CC / Check | | | | | | |
| | Next assessment payment date: 12/07/19 | | | | | |

### Club Wyndham Plus Points Conversions

Convert ownership points to Wyn. Rew. points (prior to deposit, no back to back years, $99 conversion Fee, 1,000 CWP pts = 400 WR pts) for up to:
160,000 Wyndham Rewards Points

Convert ownership points into maintenance fee dollars during first 6 months of use year ($2.10 / 1000) for a value up to:
3840.00

I have reviewed and agree with the information noted above.

# SalePoint Owner Information Sheet

Contract Number: 00074-1901506     Date of Sale: 12-05-2019     Points Purchased: 200,000
Inventory Purchased: CLUBWYNDHAM ACCESS VACATION OWNERSHIP PLAN

## Primary Owner Information

| | |
|---|---|
| Name: | Sandra Cullum |
| Address: | 2770 W 5th St Apt 7a, Brooklyn, NY 11224 |
| Phone number(s): | (718) 946-2038 (Home)     (718) 946-2038 (Work)     (Cell) |
| Email address: | diamod11224@aol.com |
| Marital status: | Single Woman |
| Spouse name: | |
| Title to be taken as: | |

## Secondary Owner Information

| | |
|---|---|
| Name: | Deirdre L Saleh |
| Address: | 2675 West 36th Street 1e , Brooklyn, NY 11224 |
| Phone number(s): | (347) 244-2753 (Home)     (212) 769-6315 (Work)     (Cell) |
| Email address: | deedee403@gmail.com |
| Marital status: | Married Woman |
| Spouse name: | |
| Title to be taken as: | Joint Tenants With The Right Of Survivorship |

WVO and its parents, subsidiaries, and affiliates (collectively "WVO") have my/our express written permission to send me/us advertising or telemarketing calls, texts, or other messages (including, but not limited to, SMS/MMS, push notifications, and in-app messaging) using an automated telephone dialing system or artificial or pre-recorded voice message at any cell phone or phone number I/we have provided above.

Additionally, I/we understand that WVO will share my/our cell phone or phone number(s) with WVO's affiliates and third-party service providers, including, but not limited to, billing or collection companies that WVO has contracted with to provide these types of services on its behalf. WVO, its affiliates, and third-party service providers have my/our express permission to send me/us calls, texts, or other messages (including, but not limited to, SMS/MMS, push notifications, and in-app messaging) using an automated dialing system or artificial or pre-recorded voice message at any cell phone or phone number I/we have provided, or at any number WVO or its affiliates and third-party service providers may obtain for the following purposes: (a) to resolve an issue or dispute regarding my/our purchase of property and/or services from WVO; (b) in connection with payment processing; (c) to collect on a debt; or (d) as necessary regarding my/our purchase of property and/or services from WVO.

By granting this consent, I/we understand that it is not a condition of my/our purchase of property and/or services from WVO or its parents or subsidiaries and I/we have the right to refuse to give such consent.

Signature _Sandra Cullum_ Sandra Cullum     Date _12/5/19_

Signature _Deirdre L Saleh_ Deirdre L Saleh     Date _12/5/19_

Signature _____     Date _____

Signature _____     Date _____

00074-1901506

No. 2528/Rev. 10-19

# *Wyndham Vacation Ownership*

**Date:** 12/05/19       **Time:** 03:38 PM

**Merchant Information:**   Wyndham Vacation Resorts
74 WVR La Belle Maison

**Owner Information:**     CULLUM, SANDRA
2770 W 5TH ST
APT 7A
BROOKLYN, NY 11224

**Order ID:** 3043253418      **Account/Contract Type:** CWA      **Account/Contract Number:** 00074190 1506

                                         **Status:** ACCEPT

| # | Fee Type | Amount |
|---|----------|--------|
| 1 | CWA Fees | 25.00 USD |
| 2 | Down Payment | 11,264.70 USD |

**Total Amount:** 11289.70 USD

**Transaction Type:** Sale

**Payment Received By or Refund To:** Visa

**Credit Card/Account Number:** ############2274

*Sandra Cullum*
Signature of SANDRA CULLUM

Print Receipt