UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANDRA L. CULLUM and DEIRDRE SALEH,<br><br>Plaintiffs,<br><br>-v-<br><br>WYNDHAM HOTELS & RESORTS CORP., WYNDHAM DESTINATIONS INC., MR. GEOFFREY A. BALLOTTI, WYNDHAM HOTELS (WH) & RESORTS, INC., MS. ELISABETH GALE, DBA WYNDHAM CORPORATE OFFICE & HEADQUARTERS, BROADRIDGE CORPORATE ISSUER SOLUTIONS,<br><br>Defendants. | 1:22-CV-09700-LTS-SN |

MEMORANDUM ORDER AND OPINION

Plaintiffs Sandra Cullum and Deirdre Saleh ("Plaintiffs"), proceeding pro se and

putatively on behalf of a class, bring this action against Defendants Wyndham Destinations, Inc.

("WDI"),[1] Broadridge Corporate Issuer Solutions ("Broadridge"), Elisabeth Gale,[2] as well as

Wyndham Hotels & Resorts, Inc. ("WHR")[3] and Geoffrey A. Ballotti ("Mr. Ballotti") (the

"WHR Defendants," and with WDI, Broadridge, and Elisabeth Gale, collectively, "Defendants"),

---

[1] WDI proffers that it was renamed Travel + Leisure Co. on February 17, 2021. (Docket entry no. 30 ("WDI Mem.") at 6 n.1.) The Court will continue to refer to Defendant as WDI to avoid confusion and for consistency with WDI's motion to dismiss.

[2] Elisabeth Gale is allegedly an employee of a WDI subsidiary that is not named as a defendant. (WDI Mem. at 9 n.4.) Ms. Gale has not been served and has not made an appearance in this action or responded to the Amended Complaint.

[3] WHR proffers that Plaintiffs improperly referred to the entity in its pleadings as Wyndham Hotels (W.H.) & Resorts, Inc. and Wyndham Hotels & Resorts, Corp. (Docket entry no. 24 ("WHR Defs. Mem.") at 1 n.1.)

asserting various federal and state law claims arising out of a timeshare contact.  (Docket entry

no. 15 (the "Amended Complaint" or "AC") at 9.)  Plaintiffs seek $367,000 in compensatory

damages, $15.4 billion in class relief, and a permanent injunction preventing Defendants from

"engaging in the unlawful activities and practices complained of."  (AC at 9, 18.)  The Court has

jurisdiction of certain of the federal claims in this action pursuant to 28 U.S.C. section 1331.

The Court does not appear to have diversity jurisdiction of Plaintiffs' state law claims.

   Before the Court are three motions to dismiss (the "Motions to Dismiss") the

Amended Complaint.  The WHR Defendants move for dismissal pursuant to Federal Rule of

Civil Procedure 12(b)(2) and, alternatively, under Federal Rule of Civil Procedure 12(b)(6),

arguing that the Court cannot exercise personal jurisdiction over them and contending that the

Amended Complaint fails to allege facts plausibly supporting any cause of action pleaded against

them.  (Docket entry no. 24 ("WHR Defs. Mem.").)  Defendant WDI separately moves for

dismissal pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. section 1 et seq. and,

alternatively, under Federal Rule of Civil Procedure 12(b)(6), arguing that the agreement

pursuant to which Plaintiffs purchased time share points includes a broad arbitration clause and

that the Amended Complaint fails to allege facts plausibly supporting any cause of action

pleaded against WDI and fails to plead its fraud causes of action with particularity.  (Docket

entry no. 30 ("WDI Mem.").)  Defendant Broadridge moves to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6), also arguing that fraud is not pleaded with particularity and asserting

that no facts are pleaded that plausibly provide support for any cause of action against

Broadridge.  (Docket entry no. 34 ("Broadridge Mem.").)  The Court has reviewed the parties'

submissions thoroughly.  For the reasons set forth below, WDI's and Broadridge's motions to

dismiss the Amended Complaint as against those defendants are granted in their entirety.  WHR

Defendants' motion to dismiss the Amended Complaint as against them for lack of personal jurisdiction is also granted.  The Court grants Plaintiffs 30 days' leave to file a Second Amended Complaint clearly setting forth the factual basis of their claims against the remaining unserved defendant, Elisabeth Gale, should they wish to continue to pursue claims against her.

<u>BACKGROUND</u>

The following summary of facts is drawn from the Plaintiffs' Amended Complaint, and their response in opposition to Defendants' motions to dismiss[4] (docket entry no. 37 ("Pl. Mem.")), the well-pleaded nonconclusory factual content of which are taken as true for purposes of this motion practice.  The Court also considers the Retail Installment Contract that is attached to the Certification of Caitlin C. Conklin (docket entry no. 31-1 ("Retail Installment Contract")) because it is "incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable LLC</u>, 622 F.3d 104, 111 (2d Cir. 2010).  The Court notes, at the outset, that Plaintiffs' extensive allegations, which refer to "Defendants" generally, consist mainly of general allegations of falsehoods and trickery and assertions that numerous laws and disclosure duties have been violated.

Plaintiffs allege that "[t]he defendants' actions have caused substantial harm to . . . elderly citizens who have fallen victim to their predatory tactics" and "suffered significant financial losses, harassment, and intimidation."  (Docket entry no. 37 ("Pl. Mem.") at 10.)  On January 21, 2019, Plaintiffs attended a timeshare sales presentation conducted by Defendants at a

---

[4]     In deciding Defendants' motions to dismiss this <u>pro se</u> complaint, it is appropriate for the Court to take into account the factual allegations contained in Plaintiffs' response papers. <u>See</u> <u>Walker v. Schult</u>, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a <u>pro se</u> party in his papers opposing the motion.").

Wyndham hotel property in midtown Manhattan.  (AC at 2.)  Plaintiffs allege that they were told

that the presentation would take ninety minutes but it instead lasted three to six hours or longer.

(Pl. Mem. at 16.)  According to Plaintiffs, "Defendants at Wyndham market and sell[] vacation

ownership interests in the form of points, property & other action, provide consumer financing in

connection with the sale of point issues, provide property management &  . . . develop and

acquire[] vacation ownership resorts."  (AC at 17.)  Participants purchase points, which are used

as currency to book a stay at Wyndham resort properties.  (Id.)  Plaintiffs further allege that they

were subjected to "high pressure sales employing a tag-team format" and were presented with

"[v]olumes of documents with little time to review before signing."  (Pl. Mem. at 16.)

According to attachments in the Amended Complaint reproducing certain pages of a Retail

Installment Contract between Plaintiffs and Wyndham Vacation Resorts, Plaintiffs purchased

Wyndham timeshare interests on December 5, 2019, and also concurrently took out loans to

finance the purchase.  (See Retail Installment Contract.)  The Contract includes the following

provision requiring disputes to be subject to binding arbitration:

> **PLEASE READ THIS PROVISION OF THE AGREEMENT
> CAREFULLY. IT PROVIDES THAT CERTAIN DISPUTES MUST BE
> RESOLVED BY BINDING ARBITRATION. IN ARBITRATION YOU
> GIVE UP THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT
> TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION
> OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS
> RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.
> ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED
> THAN COURT PROCEDURES, AND ARE SUBJECT TO VERY
> LIMITED REVIEW.**

> **34. Dispute Resolution/Arbitration.** Any Disputes between the Parties shall be
> resolved as follows:

> (a) **Definition of Disputes**. The Parties agree that any dispute, claim, suit,
> demand or controversy arising out of or relating to this Agreement (any
> *"Dispute"*) shall be determined exclusively and finally by individual
> arbitration, except as specified below. "Dispute" includes, without limitation,

> any claim regarding any breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising out of or related to the marketing, purchase and/or use of Owner's Ownership, Owner's use of Seller's properties, and/or Owner's participation in any activities/events sponsored, organized, or made available by Seller or any of its affiliates.

(Id. at 31.)  Plaintiffs do not contend that any exceptions are applicable here.  The contract further provides that arbitration shall be held in Florida.  (Id.)

Having purchased the points, Plaintiffs found it difficult to book access to the resort properties because the the properties were not available for Plaintiffs' requested dates. (AC at 13, 17.)  Defendants informed Plaintiffs that problems related to availability "can only be fixed by buying more points."  (Pl. Mem. at 16.)  At some unspecified date, Plaintiffs also attended an "Owner's Update" meeting, which turned out to be another sales presentation in which they claim to have been "subjected to another high-pressure sales pitch."  (AC at 17.)  In the period spanning February 2019 to February 2023, Plaintiffs were charged $143,201.65 through monthly assessments, at least some of which they allege to have been unauthorized. (See id. at 4, 8-9.)  Attempts to contact Defendants about the foregoing issues via letters or customer service inquiries were unsuccessful.  (Id. at 5.)

Plaintiffs allege that, at some point in the course of these events, unspecified Defendants, through unspecified representatives or agents, made false and misleading representations to Plaintiffs.  (AC at 16.)  Plaintiffs were told that the "timeshare is an investment opportunity" and that Plaintiffs "could sell their timeshare for a profit."  (Id. at 8, 17.)  Plaintiffs were also presented with "false or misleading statements about the ability to rent or resell the timeshare," "what [they] would receive as part of ownership," "the benefits or value of a timeshare purchase," and "false sales data & wrongful information."  (Id. at 13; Pl. Mem. at 16.)

The AC does not specify the statements it characterizes as false and misleading, nor does it identify particular speakers in connection with these allegations.

Procedural Background

Plaintiffs commenced this action by filing their original Complaint against Defendants on November 14, 2022.  (Docket entry no. 1 ("Original Complaint").)  Because the Original Complaint lacked specific factual support and did not conform to the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, by order dated December 20, 2022, Judge Ronnie Abrams, sua sponte, granted Plaintiffs leave to filed an amended complaint within sixty days.  (Docket entry no. 5 ("Order to Amend") at 5, 7.)  Judge Abrams also dismissed for lack of subject matter jurisdiction "any claims in which Plaintiffs seek the criminal prosecution of any of the Defendants."  (Id. at 3-4, 6-7.)

Plaintiffs filed their Amended Complaint on February 8, 2023.  In it, they assert a number of claims under federal and state civil and criminal law, including 15 U.S.C. section 1601 et seq. (the "Truth in Lending Act" or " TILA"), 12 U.S.C. section 2601 et seq. (the "Real Estate Settlement Procedures Act" or "RESPA"), 16 C.F.R. 310 (the "Telemarketing Sales Rule" or "TSR"), the "Elder Justice and Abuse Prevention Act," 15 U.S.C section 1681 et seq. (the "Fair Credit Reporting Act" or "FCRA"), 15 U.S.C. section 41 et seq. (the "Federal Trade Commission Act" or "FTCA"), 18 U.S.C. section 1961 et seq. ("RICO"), 42 U.S.C. 3601 et seq. (the "Fair Housing Act"), the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), "[f]ederal [m]ail and [w]ire [f]raud [s]tatutes," New York Executive Law, New York General Business Law section 352 et seq. (the "Martin Act"),  New York Real Property Law sections 443, 443-a, 462, and common law claims for breach of contract,

fraudulent misrepresentation, negligent misrepresentation, and fraudulent inducement.  (AC at 3, 8, 10, 12, 14-16; Pl. Mem. at 15.)

On March 9, 2023, the WHR Defendants filed their motion to dismiss the Amended Complaint; WDI and Broadridge filed their motions on April 10, 2023, and April 19, 2023, respectively.  (Docket entries no. 21, 29, 33.)  In their response filed on May 25, 2023, Plaintiffs reasserted some of their prior claims and also raised new claims for the first time.[5]  (Pl. Mem. at 5-9, 12, 18.)  Judge Abrams referred this case to Magistrate Judge Sarah Netburn for general pretrial management purposes on May 30, 2023, and this case was reassigned to this Court on June 15, 2023.  (Docket entry no. 41.)  No reply papers have been filed.

DISCUSSION

Claims under Criminal Law

As a preliminary matter, the Court must dismiss any claims in which Plaintiffs seek the criminal prosecution of any Defendant.  Plaintiffs cannot bring criminal charges against Defendants because "the decision to prosecute is solely within the discretion of the prosecutor." Leek v. Timmerman, 454 U.S. 83, 87 (1981).  Plaintiffs also cannot direct prosecutors to initiate a criminal proceeding against any Defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court."  Conn. Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 87 (2d Cir. 1972).

---

[5]     Plaintiffs assert additional claims under the Fourteenth Amendment, various provisions of New York Penal Law, and claims of bank fraud, tax fraud, securities fraud, insurance fraud, fraudulent misrepresentation, fraudulent inducement, negligence related to products liability, among other things.  (Pl. Mem. 5-9, 12, 19.)  "A pro se plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'"  Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citiations omitted).

Because Plaintiffs lack standing to cause the criminal prosecution of others, see Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973), to the extent Plaintiffs reassert or allege new claims seeking criminal prosecution of Defendants in their Amended Complaint or Response, the Court dismisses those claims for lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(h)(3).

WDI's Motion to Dismiss

WDI moves to dismiss the AC on the grounds that Plaintiffs' claims against it are subject to mandatory arbitration pursuant to the Retail Installment Contract.  (WDI Mem. at 6.) WDI also briefly notes that "WDI is not a party to the Retail Installment Contract."  (WDI Mem. at 7.)  Rather, "Plaintiffs entered into [the] Retail Installment Contract with Wyndham Vacation Resorts, Inc ('WVR')," an indirect subsidiary of WDI that is not a named defendant in this case. (Id. at 6 n.2 & 7.)  WDI takes the position, however, that Plaintiffs have obligated themselves to arbitrate any claim arising out of or regarding the retail insurance contract and thus are obliged to arbitrate their claim against WDI concerning the time share point purchase and financing.

Defendant does not, however, move to compel arbitration.  While "[s]ome district courts in this Circuit have treated motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration," the Court will not do so where the Defendant has "not explicitly or implicitly askt the court to order arbitration."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) (collecting cases).  Therefore, the Court addresses WDI's motion as solely a motion to dismiss.

Applicable Standard

The FAA provides that arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . . ."  9 U.S.C.A. § 2 (Westlaw through P.L.118-

13).  The Court is required to "direct[] the parties to proceed to arbitration in accordance with the terms of the [arbitration] agreement[,]" provided that there is no issue regarding its formation or validity.  9 U.S.C.A. § 4 (Westlaw though P.L.118-13); Alfonso v. Maggies Paratransit Corp., 203 F. Supp. 3d 244, 246 (E.D.N.Y. 2016).

To determine whether parties have agreed to arbitrate a dispute, "courts consider two questions: (1) whether a valid agreement to arbitrate under the contract in question exists and (2) whether the particular dispute in question falls within the scope of that arbitration agreement."  Spinelli v. Nat'l Football League, 96 F. Supp. 3d. 81, 99 (S.D.N.Y. 2015).  The initial question of whether a valid "agreement exists between the parties . . . is determined by state contract law."  Meyer v. Uber Techs., Inc., 868 F.3d. 66, 73-74 (2d Cir. 2017) (citing Nicosia, 834 F.3d at 229).  The party seeking arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made."  Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101-102 (2d Cir. 2022).  "This burden may be satisfied by the actual production of the arbitration agreement . . . [then] the burden of proof shifts to the plaintiff to show a 'substantial issue' concerning the presence of an agreement to arbitrate."  Roller v. Centronics Corp., No. 87-CV-5715-JFK, 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989) (citing Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625, 628 (2d Cir. 1945)).  As noted above, the agreement containing the arbitration clause here is integral to the complaint and is part of the record before the Court.

Under New York law, "a party who executes a contract is considered bound by the terms of that contract."  Ruiz v. New Avon LLC, No. 18-CV-9033-VSB, 2019 WL 4601847, at *6 (S.D.N.Y. Sept. 22, 2019) (quoting Stern v. Espeed, Inc., No. 06-CV-958-PKC, 2006 WL 2741635, at *1 (S.D.N.Y. Sept. 22, 2006)).  Furthermore, if the Court finds that the parties

executed a valid contract, "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

After a court determines that parties have entered into an arbitration agreement, it then must determine "whether the dispute at issue comes within the scope of the arbitration agreement." ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002). At the time when WDI filed its dismissal motion, courts in this circuit typically began their analysis in this regard by "classify[ing] the particular clause as either broad or narrow." Keystone Food Holdings, Ltd. v. Tyson Foods, Inc., 492 F. Supp. 3d 134, 143 (S.D.N.Y. 2020) (citation omitted). An arbitration clause covering "'any claim or controversy arising out of or relating to' an agreement is 'the paradigm of a broad clause'" and was understood to give rise to a presumption of arbitrability. Spinelli, 96 F. Supp. 3d at 100 (quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995)). After the Second Circuit's decision in Local Union 97, International Brotherhood of Electrical Workers v. Niagara Mohawk Power Corp., 67 F.4th 107 (2d Cir. 2023), however,"[c]ourts can no longer rely on broad arbitration clauses to presume arbitrability in the first instance." Galanova v. Morgan Stanley Servs. Grp. Inc., No. 23-CV-183-JGK, 2023 WL 6198823, at *4 (S.D.N.Y. Sept. 22, 2023) (citing Local Union 97, 67 F.4th at 114). Instead, Courts must first determine "whether, under ordinary principles of contract interpretation, a particular dispute is covered by the language to which the parties agreed." Local Union 97, 67 F.4th at 114. "[T]he presumption of arbitrability is a court's last, rather than first, resort" and is invoked "only where the parties' dispute concerns a valid and enforceable agreement to arbitrate that is ambiguous as to its scope." Id. at 113-14.

<u>Application</u>

The Court applies New York law to assess whether there was an agreement to arbitrate.[6]  Plaintiffs do not directly address this issue.[7]  Hower, given that a <u>pro se</u> complaint "must be construed liberally to raise the strongest arguments it suggests," <u>Walker v. Schult</u>, 717 F.3d 118, 124 (2d Cir. 2013), the Court finds that, to the extent Plaintiffs seek to challenge this issue, they allege that Plaintiffs were fraudulently induced to enter into the contract.  (AC at 8-11, 13, 17; Pl. Mem. at 15.)

Plaintiffs' argument regarding fraudulent inducement implicates step one of the arbitration analysis; that is, the Court must first consider "whether a valid agreement to arbitrate under the contract in question exists[.]"  <u>Spinelli</u>, 96 F. Supp. 3d at 99.  "[C]hallenges to a contract containing an arbitration clause fall into two categories: those that challenge the contract as a whole, and those that challenge the arbitration clause in particular."  <u>Ipcon Collections LLC v. Costco Wholesale Corp.</u>, 698 F.3d 58, 61 (2d Cir. 2012).  A challenge "to the validity of the

---

[6]     The Retail Installment Contract in several places makes references to Louisiana and Louisiana law.  (Retail Installment Contract at 25, 28-29.)  However, the parties appear to assume, in their briefs, that New York law applies.  The Court thus applies New York law when interpreting the agreement.  <u>See</u> <u>Motorola Credit Corp. v. Uzan</u>, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting <u>Krumme v. WestPoint Stevens, Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000))).

[7]     To the extent Plaintiffs address the arbitration clause at all, they refer to "[t]hree lower courts, in three separate lawsuits filed in Florida, New Jersey and South Carolina, [that] denied Wyndham's motion to compel arbitration."  (Pl. Mem. at 3.)  Plaintiffs only specifically cite "Reynolds v. Wyndham, Case #4:22-cv-00892-JD, filed in South Carolina," a case in which, they allege, the plaintiffs were not notified by the AAA until over two years after submitting their claim to arbitration "that their arbitration claim was not allowed to proceed."  (Pl. Mem. at 3.)  It appears that that case settled without a reported decision.  <u>See</u> Ord. of Dismissal, docket entry no. 28, <u>Renyolds v. Wyndham Vacation Resorts, Inc.</u>, No. 22-CV-0892-JD (D.S.C. October 21, 2022).  The Court was unable to locate a reported decision regarding an arbitration-related motion by Wyndham in Florida or New Jersey courts.

contract as a whole, and not specifically to the arbitration clause, must go to arbitrator." Spinelli,

96 F. Supp. 3d at 100 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 448-49

(2006)).  Here, Plaintiffs challenge the entire contract rather than simply the arbitration clause,

which covers disputes regarding validity.  Because a federal court cannot consider claims of

fraudulent inducement of the contract generally (see Buckeye Check Cashing, 546 U.S. at 445),

WDI has carried its burden of showing that the parties entered into an agreement to arbitrate, and

Plaintiffs have not satisfied their burden to show that the agreement is invalid.  See Spinelli, 96

F. Supp. 3d at 100 ("Because Plaintiffs do not challenge the validity of the arbitration provision

specifically, their arguments regarding the unenforceability of the arbitration provisions fail [at

step one].").

    Having determined that a valid arbitration agreement exists, the Court turns to

step two of the arbitration analysis and finds that Plaintiffs' claims fall within the scope of the

clause at issue here.  The Retail Installment Contract provides that "any dispute, claim, suit,

demand or controversy arising out of or relating to this Agreement (any "*Dispute*") shall be

determined exclusively and finally by individual arbitration."  (Retail Installment Contract at 31.)

The contract also defines "Dispute" to include, "without limitation, any claim regarding any

breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising

out of or related to the marketing, purchase and/or use of Owner's Ownership . . .  and/or

Owner's participation in any activities/events sponsored, organized, or made available by Seller

or any of its affiliates."  (Id.)  The Court here does not need to rely on the presumption of

arbitrability as the Plaintiffs' claims against WDI clearly "aris[e] out of or relat[e] to" the

contract.  (Id.)  The Amended Complaint asserts a bevy of federal and state statutory claims that

govern certain real estate or consumer credit related transactions that Plaintiffs claim are

applicable to their timeshare purchase.  (AC at 10, 12, 15-16.)  Plaintiffs' state common law

claims of breach of contract, fraudulent misrepresentation, and negligent misrepresentation also

plainly pertain to the contract or, at the very least, arise out of Plaintiffs' participation in the

timeshare sales presentations.  (Id. at 3, 8, 14.)  The terms of the arbitration provision thus

indicate that Plaintiffs consented to submit the claims to arbitration.  See Galanova, 2023 WL

6198823, at *4.  Therefore, the Court grants WDI's motion to dismiss the claims against it,

without prejudice to pursuit of those claims in a proper arbitral forum.

 WHR Defendants' Motion to Dismiss

The WHR Defendants jointly move to dismiss the Amended Complaint

(1) pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that WHR and Mr. Ballotti are

not subject to personal jurisdiction in New York, (2) pursuant to Federal Rule of Civil Procedure

12(b)(6), arguing that the Amended Complaint fails to "state a claim upon which relief can be

granted", and (3) for failure to plead fraud with "particularity" as required by Federal Rule of

Civil Procedure 9(b).  (WHR Defs. Mem. at 3, 6, 8.)  The Court grants the motion because the

Court lacks personal jurisdiction over both defendants.

Applicable Standard

On a motion to dismiss a complaint for lack of personal jurisdiction, "[a] plaintiff

bears the burden of demonstrating personal jurisdiction over a person or entity against whom it

seeks to bring suit."  Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir.

2013) (internal quotation marks and citation omitted).  The court must "construe the pleadings

and any supporting materials in the light most favorable to the plaintiffs."  Licci ex rel. Licci v.

Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013).  "Where, as here, a court

relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, the

plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (internal quotations omitted).  At this stage, Plaintiffs' "prima facie showing may be established solely by allegations." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  Such allegations, however, must include some "'factual specificity' and [a plaintiff] cannot establish jurisdiction through conclusory assertions alone." Berdeaux v. OneCoin Ltd., 561 F. Supp. 3d 379, 395 (S.D.N.Y. 2021) (quoting Cont'l Indus Grp. v. Equate Petrochemical Co., 586 F. App'x 768, 769 (2d Cir. 2014)).  Plaintiffs must also "establish personal jurisdiction separately over each defendant." In re Aegean Marine Petroleum Network, Inc. Sec. Litig., 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021).

   "There are two types of personal jurisdiction: specific and general." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225.  "A court with general jurisdiction over a [defendant] may adjudicate all claims against that [defendant]—even those entirely unrelated to the defendant's contacts with the state." Id.  Specific jurisdiction, on the other hand, is "conduct-linked jurisdiction" and requires a connection between the forum state that is exercising jurisdiction and the underlying controversy giving rise to the claims asserted.  Id. Courts conduct a two-part inquiry to determine whether the assertion of personal jurisdiction is appropriate: "First, [the Court] determine[s] whether the defendant is subject to jurisdiction under the law of the forum state—here, New York.  Second, [the Court] consider[s] whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." Id. at 224.

<u>Application</u>

*General Jurisdiction*

Under New York Civil Practice Laws and Rules ("N.Y. C.P.L.R.") section 301, a court can exercise general jurisdiction when a defendant has "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in [New York]." <u>McGowan v. Smith</u>, 419 N.E.2d 321, 323 (1981) (quoting <u>Simonson v. Int'l Bank</u>, 200 N.E.2d 427 (1964)). To warrant the exercise of general jurisdiction, New York law requires that the defendant be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." <u>Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.</u>, 918 F.2d 1039, 1043 (2d Cir. 1990) (internal citations omitted). But even if N.Y. C.P.L.R. section 301 is satisfied, courts must also ensure that the exercise of general jurisdiction comports with due process, which requires that a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127 (2014) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)). For corporations, the "paradigm bases" for general jurisdiction where a corporation can be deemed "at home" include the state of incorporation and the principal place of business. <u>Sonera Holding B.V.</u>, 750 F.3d at 225. For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." <u>Daimler</u>, 571 U.S. at 137 (quoting <u>Goodyear</u>, 564 U.S. at 924).

In their motion, the WHR Defendants contend that the Court cannot exercise general jurisdiction over WHR and Mr. Ballotti because neither defendant is "at home" in New York. (WHR Defs. Mem. at 5.) That is, they argue Plaintiffs have not alleged facts showing that Defendants' contacts with New York are so "continuous and systematic" as to render them "at

home" in the state.  (<u>Id.</u>)  WHR is incorporated in Delaware, and its principal place of business is in New Jersey.  (<u>Id.</u> at 5; <u>see also</u> docket entry no. 23 ("Merriweather Decl.") ¶ 2.)  Mr. Ballotti is a resident of New Jersey.  (Merriweather Decl. ¶ 3.)  To the extent Plaintiffs address general jurisdiction in their opposition to Defendants' motion to dismiss, they claim only that "[a]ll Defendants are . . . approved to operate in . . . New York City," and WHR is "a business that operates timeshare, hotels & sales of property . . . that provides services to the public, in their new York Office [sic]" in midtown.  (Pl. Mem. at 9.)  Because Plaintiffs have failed to allege facts indicating that WHR or Mr. Ballotti are "at home" in New York, the Court does not have general jurisdiction over either defendant.

*Specific Jurisdiction*

New York's long-arm statute permits courts to exercise specific jurisdiction "over any non-domiciliary" who

1.  transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.  commits a tortious act within the state . . .; or

3.  commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4.  owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).  The statute also requires that the cause of action must "aris[e] from" one of the enumerated acts above.  <u>Id.</u>  The "arising from" requirement is satisfied if a plaintiff shows a "substantial relationship" or "articulable nexus" between the claim being asserted and

the actions taken in the forum state.  Group One Ltd. v. GTE GmbH, 523 F. Supp. 3d 323, 336

(E.D.N.Y. 2021) (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007)).

       "In cases involving corporate defendants, a court's exercise of personal

jurisdiction over a corporation's officer is predicated on a showing that the officer engaged in

personal conduct that is related to the transaction that underlies the claim."  Id.; see also Karabu

Corp. v. Gitner, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) ("[P]laintiffs do not contend that

defendants personally engaged in any business in New York sufficient to confer jurisdiction over

them in their individual capacities.").  Where Plaintiffs do not allege any personal involvement,

section 302(a) also permits the exercise of personal jurisdiction under agency theory.  Group One

Ltd., 523 F. Supp. 3d at 337-38.  If a corporation is subject to personal jurisdiction in the state, a

corporate officer who "played a part in the [corporate] activities that gave rise to the action" is

also subject to jurisdiction as a result of the agency relationship between the two.  Ramiro Aviles

v. S & P Glob., Inc., 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019) (quoting Arch Specialty Ins. Co.

v. Ent. Specialty Ins. Servs., Inc., No. 04-CV-1852-RCC, 2005 WL 696897, at *4 (S.D.N.Y.

Mar. 24, 2005)).

       To establish an agency relationship for the purposes of the New York long-arm

statute, a plaintiff must "convince the court that [the corporation] engaged in purposeful

activities in this State in relation to [Plaintiff's] transaction for the benefit of and with the

knowledge and consent of the [individual defendant] and that [the individual defendant]

exercised some control over [the corporation] in the matter."  Id. (quoting Arma v. Buyseasons,

Inc., 591 F. Supp. 2d 637, 647 (S.D.N.Y. 2008)).  As part of this inquiry, Plaintiffs must show

that the corporate officer was a "'primary actor in the transaction in New York' that gave rise to

the litigation, and not merely 'some corporate employee . . . who played no part in' it."  Karabu

Corp., 16 F. Supp. 2d at 323 (quoting Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d

Cir. 1988)).  Vague and conclusory assertions that corporate officers exercised control over the

corporation are insufficient; personal jurisdiction "cannot be shown based merely upon [their]

title or position within the corporation."  Id. at 324.

    The WHR Defendants contend that Plaintiffs have not alleged any facts in their

Amended Complaint demonstrating that WHR and Mr. Ballotti engaged in activities in New

York from which Plaintiffs' claims arise.  (WHR Defs. Mem. at 5-6.)  Indeed, even construed

favorably, Plaintiffs' Amended Complaint and Response fall short of establishing a basis for

specific jurisdiction over the WHR Defendants.  First, Plaintiffs rely on group pleading, failing

to distinguish among, or make specific allegations against, the various Wyndham affiliated

entities and personnel.  (AC at 6, 8-10, 14, 16-17;  Pl. Mem. at 2-3, 5, 9-10, 16); see Berdeaux,

561 F. Supp. 3d at 397 (Plaintiffs' prolific use of "improper group pleading . . . is plainly

impermissible to . . . establish a prima facie case of personal jurisdiction against each Defendant

as to each claim asserted.").  Furthermore, the vague assertion that WHR has businesses in New

York is not  legally sufficient to satisfy Plaintiffs' burden on the issue of jurisdiction.  See id. at

395 (requiring "factual specificity" to establish jurisdiction).

    Nor do Plaintiffs address the nexus requirement by demonstrating how their

claims "arise out of" WHR's contacts in New York.  They do not allege facts demonstrating

WHR's connection, if any, to the "Wyndham Hotel Site location" where the sales presentations

took place or the "Marketing Team" that allegedly solicited Plaintiffs there, nor do they connect

any specific alleged wrongdoing to those contacts or to the WHR Defendants.  (AC at 2.)  In

sum, although Plaintiffs make numerous references to actions taken by an unspecified

"Defendant," or by "Defendants," they do not clearly identify specific connections beween WHR

and New York and how their claims arise out of those connections.  Therefore, they have failed

to carry their burden of showing that the Court can properly exercise personal jurisdiction over

WHR.  See Karabu Corp., 16 F. Supp. 2d at 324 ("Courts have  . . . routinely granted 12(b)(2)

motions for lack of personal jurisdiction where the plaintiff made only broadly worded and

vague allegations about a defendant's participation in the specific matter at hand.").

      Plaintiffs' allegations against Mr. Ballotti, an out-of-state corporate officer of

WHR, are also insufficient to support long-arm personal jurisdiction under N.Y. C.P.L.R. section

302(a).  Because there is no contention that Mr. Ballotti was personally involved in any business

in New York that would permit the Court to exercise jurisdiction over him in his individual

capacity, the Court construes Plaintiffs' argument to base jurisdiction on New York's agency

theory of personal jurisdiction under section 302(a).  As explained above, Plaintiffs have not

established that WHR is subject to jurisdiction in the state, which is an initial requirement under

the agency theory.  Furthermore, Plaintiffs offer no facts identifying specific conduct of Mr.

Ballotti that would support a finding that he was a primary actor in or exercised control over

WHR's alleged actions in New York that gave rise to this litigation.  Karabu Corp., 16 F. Supp.

2d at 323-24.  Instead, Plaintiffs conclusorily claim that Mr. Ballotti, as CEO, played a "central

role in orchestrating the illegal activities" set out in their Amended Complaint and approved the

"actions of his entire staff at all levels," was aware that the company was engaged in misconduct,

and conspired with the other named defendants to defraud them.  (AC at 3-4, 8-9, 14, 17; Pl.

Mem. at 2, 9.)  Such conclusory statements fall far short of the required prima facie case for

personal jurisdiction over him.  For the foregoing reasons, Plaintiffs have not satisfied their

burden of establishing that the Court has personal jurisdiction over either of the WHR

Defendants.

Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  District courts generally grant a pro se plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile.  See Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim. . . ."  Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012).  An amendment would therefore be futile "if the court would lack personal jurisdiction over the would-be defendant."  Hunter v. Deutsche Lufthansa AG, 863 F. Supp. 2d 190, 202 (E.D.N.Y. 2012); see also Spiegel v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010) (affirming the district court's denial of a motion to amend based on futility because plaintiffs failed to establish personal jurisdiction over the defendant).

Plaintiffs have already amended their complaint once and have not filed a motion for a further amendment.  Leave to amend Plaintiffs' claims against WHR and Mr. Ballotti a second time is not warranted because amendment would be futile.  Plaintiffs' extensive allegations in the Amended Complaint and Response, which refer to "Defendants" generally, provide no indication of involvement by WHR or Mr. Ballotti in the timeshare sales activity or contract.

Broadridge's Motion to Dismiss

Broadridge moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Amended Complaint for failure to state a claim.

Applicable Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted).  A pro se complaint "must be construed liberally to raise the strongest arguments it suggests." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotations and citations omitted).  However, "a pro se complaint must [still] state a plausible claim of relief." Id. (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)).  Thus, the Court "cannot invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

Application

*Federal Claims*

Among the numerous federal law claims that Plaintiffs assert, it is unclear which ones they seek to bring against Broadridge specifically.  The Court has read Plaintiffs' allegations liberally and, after careful examination of Plaintiffs' federal statutory claims, the Court finds that Plaintiffs have failed to allege sufficient facts to state any claim that would

entitle them to relief against Broadridge.  Plaintiffs largely bring claims under various federal

consumer protection laws related to consumer credit and real estate transactions.  Their Amended

Complaint and Response do not, however, allege any facts to indicate that any of these statutes

are applicable to Broadridge.  To demonstrate the claims' deficiencies, the Court analyzes a few

examples:

*RESPA*

RESPA was enacted "to insure that consumers  . . . are provided with greater and

more timely information on the nature and costs of the settlement process and are protected from

unnecessarily high settlement charges caused by certain abusive practices. . . ."  12 U.S.C.

§ 2601(a).  RESPA covers "federally related mortgage loan[s]," which are loans "secured by a

first or subordinate lien on residential real property . . . designed principally for the occupancy of

from one to four families. . . ."  12 U.S.C. § 2602(1)(A).  The law requires lenders of these loans

to provide borrowers with certain disclosures.  See id. §§ 2603, 2604.  RESPA also imposes

certain duties on servicers of federally related mortgage loans, including the duty to reply to,

investigate, and make appropriate corrections in response to borrower inquiries for information

related to the servicing of their loan.  Id. § 2605(e)(1),(2); see Sutton v. CitiMortgage, Inc., 228

F. Supp. 3d 254, 260-61 (S.D.N.Y. 2017).  "Servicing" here is defined as "receiving any

scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making

payments of principal and interest and such other payments with respect to the amounts received

from the borrower. . . ."  12 U.S.C. § 2605(i)(3).

Plaintiffs do not a identify the provisions of RESPA under which they seek relief,

nor do Plaintiffs allege facts indicating that Broadridge is a lender—much less a lender of a

federally related mortgage loan—or a loan servicer.  Plaintiffs' RESPA claims against

Broadridge must therefore be dismissed for failure to state claim upon which relief may be granted.

*TILA*

TILA is meant "to assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a); <u>see</u> <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 412 (1998).  The Act requires that creditors or lessors disclose to borrowers credit terms such as "finance charges, annual percentage rates of interest, and the borrower's rights," <u>Beach</u>, 523 U.S. at 412, including the right to rescission under certain circumstances when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling.  15 U.S.C. § 1635(a).  A "lessor" is defined as "a person who is regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease."  <u>Id.</u> § 1667(3).  A "creditor" is "a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or . . . by agreement."  <u>Id.</u> § 1602(g).

Plaintiffs contend that they were not provided with accurate and complete disclosures regarding financing terms and rescission rights related to a loan.  (AC at 2, 4, 8, 10, 13; Pl. Mem. at 13.)  In their Response, Plaintiffs further assert that "[a]ll Defendants are guilty" of violating TILA by engaging in deceptive or misleading advertising and predatory lending tactics, but they offer no facts in support of those contentions.  (Pl. Mem. at 13.)  Plaintiffs also do not allege that Broadridge is a lessor or creditor within the meaning of the Act, or that Broadridge is involved in the extension of consumer credit.  Because they have offered no

factual matter to support a claim of TILA violations against Broadridge, the claim must be dismissed.

> *Fair Credit Reporting Act*

The Fair Credit Reporting Act "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and property utilization of consumers' information." Longman v. Wachovia Bank, N.A., 702 F.3d 148, 150 (2d Cir. 2012).  The Act imposes certain disclosure duties on consumer reporting agencies and allows consumers to obtain and dispute information in consumer credit reports.  See 15 U.S.C. § 1681g(a), (c)(1)(B).  Consumers can dispute the accuracy of information contained in their file at the consumer reporting agency directly with the agency, in response to which the agency must conduct a reasonable investigation and correct any inaccuracies in the report.  Id. § 1681i(a)(1)(A).  Furnishers of information to consumer reporting agencies likewise are subject to certain duties to these agencies.  Id. § 1681s-2.  Consumers can also dispute the accuracy of their information directly with the furnisher, requiring them to investigate and potentially provide corrections of inaccurate information to credit agencies.  Id. § 1681s-2(b).

Plaintiffs appear to assert that some or all Defendants furnished inaccurate credit information "to mess up & muddy [their] credit reports."  (AC at 10.)  They also claim that they have not been afforded the opportunity to dispute the allegedly inaccurate information.  (Id.) Plaintiffs do not allege that Broadridge is a consumer reporting agency or a furnisher of information to consumer reporting agencies that would be subject to the foregoing duties under the Act.  Plaintiffs' claims against Broadridge under the Fair Credit Reporting Act must therefore be dismissed.

*Remaining federal claims*

Plaintiffs' other federal law claims suffer from deficiencies substantially similar to those discussed noted above.  There are no facts from which the Court could reasonably infer that any of the statutes are applicable to Broadridge or that Broadridge did, or refrained from doing, any action that violates any provision of the statutes.  Plaintiffs thus have also failed to state a claim upon which relief may be granted with respect to the other federal statutory and constitutional provisions they reference in their Amended Complaint, and those claims will be dismissed pursuant to Rule 12(b)(6).

*State law claims*

Plaintiffs' remaining claims against Broadridge, which is the only remaining defendant that has appeared, are based on state statutory and common law.  Pursuant to 28 U.S.C. section 1367(c)(3), a district court can decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction."  The Court has dismissed Plaintiffs' federal law claims against Broadridge, and Plaintiffs have not demonstrated or even asserted that the Court has diversity jurisdiction of this action under 28 U.S.C. section 1332.  Where federal law claims have been eliminated prior to trial, district courts "balance the values of judicial economy, convenience, fairness, and comity" to determine whether to exercise supplemental jurisdiction over state law claims.  Klein & Co. Futures, Inc. v. Board of Trade, 464 F.3d 255, 262 (2d Cir. 2006).  When it is early in the litigation, "courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  Id.   Here, the litigation is in its early stages and discovery has not yet begun. Because none of the factors indicates that the Court should exercise supplemental jurisdiction,

the Court declines to do so.  Further, Plaintiffs have not alleged facts indicating that the Court

has diversity jurisdiction over the state law claims under 28 U.S.C. section 1332.

      For the foregoing reasons, the Court grants Broadridge's motion to dismiss

Plaintiffs' claims against it.

<u>Elisabeth Gale</u>

      The Court notes, and WDI points out in its motion to dismiss (WDI Mem. at 9

n.4), that Defendant Elisabeth Gale has not been served with either the original Complaint or the

Amended Complaint, nor has she made an appearance or filed a response in this case.  Under

Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days

after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must

dismiss the action without prejudice against that defendant or order that service be made within a

specified time."  This Circuit has construed this to mean that a district court has discretion to

grant an extension for service whether or not there is good cause.  <u>Zapata v. City of New York</u>,

502 F. 3d 192, 197 (2d Cir. 2007).

      Plaintiffs filed their Amended Complaint on February 8, 2023.  (Docket entry no.

15.)  On March 1, 2023, Plaintiffs raised to the Court that they have encountered issues in

serving Defendants, including Elisabeth Gale.  (Docket entry no. 19 ("Letter to Judge Abrams")

at 2.)  In response to this and other inquiries made by Plaintiffs, Judge Abrams repeatedly

referred them to the NYLAG Legal Clinic for Pro Se Litigants for assistance.  (Docket entry nos.

14, 17, 20.)  In an Order dated March 3, 2023, Judge Abrams also noted that "to the extent

Plaintiffs require an extension of time to serve the summons and complaint, they may request

one."  (Docket entry no. 20 at 1.)  Plaintiffs have not done so, and the ninety-day period for

service provided in Rule 4(m) has since expired.

That said, the Court exercises its discretion to grant an extension for service without requiring a showing of good cause.  Although they have not requested an extension from the Court,  Plaintiffs are proceeding pro se and, as noted in their Letter to Judge Abrams, have made good faith attempts to serve Elisabeth Gale and comply with court procedures.  Because the current Amended Complaint appears to be insufficient to support personal jurisdiction and state claims against Ms. Gale upon which relief may be granted, **the Court grants Plaintiffs 30 days to file a Second Amended Complaint clearly setting forth the factual basis of their claims against Ms. Gale and the factual basis for their contention that the Court can properly exercise personal jurisdiction over her.**  If no Second Amended Complaint is filed within 30 days, Plaintiffs' Claims against Ms. Gale will be dismissed without prejudice and this case will be closed.  Plaintiffs' attention is directed to the more extensive instructions in the "Conclusions" section below.

<u>CONCLUSION</u>

For the foregoing reasons, WDI's motion to dismiss the Amended Complaint is granted without prejudice to arbitration of Plaintiffs's claims in Florida in accordance with the provisions of the contract underlying the transactions at issue in this case.  The WHR Defendants' motion to dismiss the Amended Complaint for lack of personal jurisdiction is granted as to both Mr. Ballotti and WHR.  The Court also dismisses Plaintiffs' federal law claims against Broadridge pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, and declines to exercise supplemental jurisdiction of any state or local law claims against Broadridge.

Plaintiffs have not effected proper service on Defendant Gale, nor does the Amended Complaint provide facts that would indicate a basis for the exercise of personal

jurisdiction over Ms. Gale or for any claims for relief against Ms. Gale.  **If Plaintiffs still wish to pursue litigation in the Court against Ms. Gale, they may file a Second Amended Complaint within 30 days of the date of this Order.**  The Second Amended Complaint may only assert claims against Ms. Gale.  In the "Statement of Claim" section of their Second Amended Complaint, Plaintiffs must provide a short and plain statement of the specific facts supporting each claim against Ms. Gale. Plaintiffs should include all the information in the amended complaint that they want the Court to consider, including:

    a) a description of all relevant events, including what Ms. Gale did or failed to do,

    b) the approximate date and time of each event, and the general location where each event occurred;

    c) a description of the injuries Plaintiffs suffered;

    d) facts demonstrating that the Court can properly exercise personal jurisdiction over Ms. Gale here in New York; and

    e)  the relief Plaintiffs seek, such as money damages, injunctive relief, or declaratory relief.

Plaintiffs are advised that although the Court is "obligated to draw the most favorable inferences that [Plaintiffs'] complaint supports, [the Court] cannot invent factual allegations that [they] ha[ve] not pled."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

Because Plaintiffs' Second Amended Complaint will completely replace, not supplement, the original and First Amended Complaint, any facts or claims against Ms. Gale that Plaintiffs want to include from the original complaint must be repeated in the Second Amended Complaint.

**If Plaintiffs do not file a Second Amended Complaint clarifying the basis for their claims against Ms. Gale and the facts on which they base their contention that Ms. Gale is subject to personal jurisdiction in this Court within 30 days from the date of this order, the Court will dismiss the claims against Ms. Gale without prejudice and close this case.  If Plaintiffs file a Second Amended Complaint, the Court will evaluate its content for sufficiency and determine whether a summons will be issued.**

This case remains referred to Magistrate Judge Sarah Netburn for general pretrial management.  This Memorandum Opinion and Order resolves docket entries no. 21, 29, and 33.

The Clerk of Court is respectfully directed to (1) terminate Broadridge Corporate Issuer Solutions, Geoffrey A. Ballotti, Wyndham Destinations Inc., and Wyndham Hotels & Resorts, Inc. (sued as "Wyndham Hotels (WH) & Resorts, Inc.," and "Wyndham Corporate Office & Headquarters") as defendants in this action, and (2) mail Plaintiffs, at the addresses below, copies of this Memorandum Opinion and Order, together with a form Amended Complaint.

SO ORDERED.

Dated: New York, New York
February 12, 2024

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Mail to:

Sandra L. Cullum
2770 West 5th Ave., Apt. 7A
Brooklyn, NY 11224

Deirdre Saleh
2675 W. 36th St., Apt. 1E
Brooklyn, NY 11224